**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

WENDI MADER,

        Plaintiff,

  v.

EMED, LLC, EMED WEIGHT LOSS,
LLC, EMED POPULATION HEALTH,
LLC, EMED POPULATION HEALTH,
INC., MICHAEL FERRO, and JUSTIN
DEARBORN,

        Defendants.

Case No.: 1:26-CV-23258-BB

---

## <u>DEFENDANTS' OMNIBUS MOTION TO DISMISS</u>

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT.............................................................................................1

FACTUAL BACKGROUND................................................................................................4

ARGUMENT. ........................................................................................................................7

I.     PLAINTIFF FAILS TO STATE CLAIMS FOR DISCRIMINATION OR RETALIATION UNDER TITLE VII, FCRA, OR MDHRO (COUNTS I–IX, XI–XIII). ...................................................................................................7

     A.     Plaintiff Fails to State Claims for Gender Discrimination (Counts I–III)...........................................................................................................8

     B.     Plaintiff Fails to State Claims for Hostile Work Environment Claims (IV–VI)..........................................................................................10

     C.     Plaintiff Fails to State Claims for Retaliation (Counts VII–IX). ...............13

     D.     Plaintiff Fails to State Claims for Retaliatory Hostile Work Environment (Counts XI, XII, and XIII)...............................................16

II.     PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A FPWA CLAIM (COUNT X) .........................................................................................................17

III.     ANY CLAIMS "WITH RESPECT TO THE PLAN" CAN ONLY BE BROUGHT IN DELAWARE PURSUANT TO ITS FORUM SELECTION CLAUSE (COUNTS XIV, XV, XVII–XXIII, XXV). .......................................20

IV.     PLAINTIFF'S DUPLICATIVE COMMON LAW CLAIMS PLED UNDER THE WRONG STATE'S LAW SHOULD BE DISMISSED (COUNTS XIV, XV, XVII, XIX, XXI, XXIII, XXV, XXVII)..........................................21

V.     PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT THE DRAFT PLAN WAS A CONTRACT OR WAS BREACHED (COUNTS XIV, XV)......22

VI.     PLAINTIFF FAILS TO PLEAD ANY DAMAGES RELATED TO A BREACH OF HER EMPLOYMENT RELATIONSHIP (COUNTS XVI, XVII)..................................................................................................................24

VII.     PLAINTIFF FAILS TO STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTS XVIII, XIX)..............................................................................25

VIII.     PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL (COUNTS XX, XXI) ...............................................................26

IX.     PLAINTIFF FAILS TO PLEAD FRAUDULENT INDUCEMENT (COUNTS XXII, XXIII)..............................................................................29

X.    PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE (COUNTS XXIV–XXV)......................................................32

    A.    The Individual Defendants are Not Strangers to eMed's Relationships. ........................................................................................32

    B.    Plaintiff Has No Underlying Contract or Breach. ....................................33

    C.    Plaintiff Pleads No Legitimate Expectancy of the CEO Role or Continued Employment ...................................................................33

XI.    PLAINTIFF FAILS TO STATE CIVIL CONSPIRACY CLAIMS (COUNTS XXVI, XXVII)................................................................34

    A.    Plaintiff Pleads No Underlying Wrong or Unlawful Act .........................34

    B.    The Intra-Corporate Conspiracy Doctrine Bars Plaintiff's Conspiracy Claims ....................................................................34

CONCLUSION. ...................................................................................35

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*,
    830 So. 2d 924 (Fla. 4th DCA 2002) ................................................................. 27

*Advanced Prot. Techs., Inc. v. Square D Co.*,
    2005 WL 8185594 (M.D. Fla. Jan. 31, 2005)....................................................... 27

*Ahmad v. Porche Cap. Ltd.*,
    2025 WL 417351 (Del. Super. Ct. Feb. 6, 2025)................................................. 30

*AIU Insurance Co. v. Philips Electronics No. Am. Corp.*,
    2018 WL 367849 (Del. Ch. Jan. 11, 2018) .......................................................... 23

*Arafat v. Sch. Bd. of Broward Cnty.*,
    549 F. App'x 872 (11th Cir. 2013) ........................................................................ 8

*Bailey v. Tektronix, Inc.*,
    2022 WL 4132881 (D. Del. Sept. 12, 2022), *aff'd*, 2025 WL 1341876
    (3d Cir. May 8, 2025)............................................................................................. 26

*Bardelas v. City of Doral*,
    2021 WL 12313738 (S.D. Fla. Aug. 23, 2021)............................................... 11, 12

*Barreth v. Reyes I, Inc.*,
    2020 WL 4370137 (M.D. Ga. Jul. 29, 2020) ....................................................... 11

*Bentley v. Bank of Am., N.A.*,
    773 F. Supp. 2d 1367 (S.D. Fla. 2011) ................................................................ 33

*Black v. Reynolds*,
    150 F. Supp. 3d 1273 (S.D. Ala. 2015), *aff'd,* 674 F. App'x 851 (11th
    Cir. 2016) .............................................................................................................. 14

*Blash v. City of Hawkinsville*,
    2018 WL 3150346 (M.D. Ga. June 27, 2018) ................................................ 11, 12

*Blaustein v. Lord Baltimore Cap. Corp.*,
    2012 WL 2126111 (Del. Ch. May 31, 2012)........................................................ 28

*Braga Inv. & Advisory, LLC v. Yenni*,
    2023 WL 3736879 (Del. Ch. May 31, 2023)........................................................ 29

*Bridge Fin., Inc. v. J. Fischer & Assocs., Inc.*,
   310 So. 3d 45 (Fla. 4th DCA 2020) ...................................................................... 33

*Brooks v. Blue Cross and Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997) ............................................................................ 3

*Brown v. Railcrew Xpress LLC*,
   2022 WL 22894863 (N.D. Ala. Feb. 15, 2022) .................................................. 12

*Butterfield v. JetBlue Airways Corp.*,
   2022 WL 291003 (11th Cir. Feb. 1, 2022) ......................................................... 18

*Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*,
   2022 WL 2761720 (11th Cir. July 15, 2022) ..................................................... 15

*Cambridge N. Point LLC v. Boston & Maine Corp.*,
   2010 WL 2476424 (Del. Ch. June 17, 2010) ..................................................... 23

*Carey v. Kirk*,
   2026 WL 836688 (11th Cir. Mar. 26, 2026) ...................................................... 35

*Casey v. Bank of Am., N.A.*,
   2014 WL 12580515 (S.D. Fla. Mar. 12, 2014) .................................................. 25

*Clear Marine Ventures, Ltd. v. Brunswick Corp.*,
   2009 WL 10667205 (S.D. Fla. Apr. 6, 2009) ..................................................... 30

*Colson v. Wal-Mart Stores, Inc.*,
   2019 WL 5102173 (S.D. Fla. Oct. 11, 2019) ....................................................... 8

*Commodores Ent. Corp. v. McClary*,
   324 F. Supp. 3d 1245 (M.D. Fla. 2018), *aff'd,* 822 F. App'x 904 (11th
   Cir. 2020) ........................................................................................................... 33

*Core Distribution v. World Trade Corp.*,
   2026 WL 1251628 (S.D. Fla. May 7, 2026) ....................................................... 32

*Costanza Y Cruz Medina v. Scottsdale Ins. Co.*,
   2023 WL 11801301 (S.D. Fla. Mar. 7, 2023) .................................................... 29

*Coulter v. ADT Sec. Services*,
   744 Fed. Appx. 615 (11th Cir. 2018) ................................................................. 22

*Crawford v. Carroll*,
   529 F.3d 961 (11th Cir. 2008) ........................................................................... 13

iv

*Crawley-Kitzman v. Hernandez*,
 324 So. 3d 968 (Fla. 3d DCA 2021) ................................................................. 34

*In re CVR Ref., LP Unitholder Litig.*,
 2020 WL 506680 (Del. Ch. Jan. 31, 2020) ................................................. 32, 33

*Day v. Taylor*,
 400 F.3d 1272, 1276 (11th Cir. 2005) ............................................................. 23

*Dieckman v. Regency GP LP*,
 2018 WL 1006558 (Del. Ch. Feb. 20, 2018) ................................................... 33

*Dixon v. Allergan USA, Inc.*,
 645 F. App'x 930 (11th Cir. 2016) .................................................................. 29

*Doe v. Miami Gardens Square One, Inc.*,
 2025 WL 81528 (S.D. Fla. Jan. 13, 2025) (Bloom, J.) ...................................... 7

*Drisin v. Fla. Int'l Univ. Bd. of Trs.*,
 2017 WL 3505299 (S.D. Fla. June 27, 2017) .................................................... 8

*Driven Intermediate Holdings, Inc. v. Jimenez*,
 2025 WL 2631622 (Del. Super. Ct. Aug. 28, 2025) ........................................ 35

*Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*,
 413 So. 2d 51 (Fla. 3d DCA 1982) ................................................................. 23

*Erickson v. Lakeland Regional Medical Ctr., Inc.*,
 2022 WL 1487588 (M.D. Fla. May 11, 2022) ................................................. 16

*Escarra v. Regions Bank*,
 353 F. App'x 401 (11th Cir. 2009) .................................................................. 28

*Evans v. Cantor Ins. Grp., LP.*,
 2022 WL 3908005 (D. Del. Aug. 30, 2022) .................................................... 30

*EZLinks Golf, LLC v. PCMS Datafit, Inc.*,
 2017 WL 1312209 (Del. Super. Ct. Mar. 13, 2017) (*cleaned up*) ................. 31

*Faragher v. City of Boca Raton*,
 524 U.S. 775 (1998) ......................................................................................... 10

*Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*,
 488 F. Supp. 2d 1231 (S.D. Fla. 2007) ........................................................... 28

v

*Fin. Sec. Assur., Inc. v. Stephens, Inc.*,
  500 F.3d 1276 (11th Cir. 2007)...................................................................................... 9

*Fleming v. The Fla. Bar*,
  994 F. Supp. 2d 1255 (N.D. Fla. 2014).................................................................. 10, 15

*Francois v. Hatami*,
  565 F. Supp. 3d 1259 (S.D. Fla. 2021) ......................................................................... 34

*Fried v. Stiefel Laboratories, Inc.*,
  2012 WL 4364300 (S.D. Fla. June 8, 2012) ................................................................. 27

*Furnari v. Wallpang, Inc.*,
  2014 WL 1678419 (Del. Super. Ct. Apr. 16, 2014)...................................................... 31

*Gerbier v. J.R. Eight, Inc.*,
  2011 WL 13268707 (S.D. Fla. Aug. 12, 2011).............................................................. 13

*Gessner v. S. Co.*,
  2026 WL 1488160 (Fla. May 28, 2026) ................................................................... 2, 17

*Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*,
  2016 WL 4056205 (D. Del. July 28, 2016) ................................................................... 28

*Global Capital Partners v. Green Sapphire Holdings, Inc.*,
  355 A.3d 120 (Del. Ch. 2026)....................................................................................... 23

*Goldsmith v. Bagby Elevator Co.*,
  513 F.3d 1261 (11th Cir. 2008)...................................................................................... 13

*Gregory v. Ga. Dep't of Human Res.*,
  355 F.3d 1277 (11th Cir. 2004)........................................................................................ 9

*Griffith v., Ga. Cyber Academy*,
  2026 WL 1450484 ............................................................................................................ 8

*Guilbeau v. Footprint Int'l Holdco, Inc.*,
  2026 WL 1180159 (Del. Ch. Apr. 30, 2026) ................................................................ 26

*Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*,
  516 F. Supp. 2d 1253 (S.D. Fla. 2007) ......................................................................... 25

*Harper v. Blockbuster Ent. Corp.*,
  139 F.3d 1385 (11th Cir. 1998)........................................................................................ 7

*Harvey v. MD Now*,
2024 WL 6886986 (S.D. Fla. Mar. 4, 2024)........................................................ 19

*Haugabrook v. Cason*,
518 Fed. App'x. 803 (11th Cir. 2013) .......................................................... 10

*Hercules Cap., Inc. v. Gittleman*,
2018 WL 395489 (S.D. Fla. Jan. 12, 2018) ......................................................34

*Hogan v. City of Fort Walton Beach*,
817 F. App'x 717 (11th Cir. 2020) .......................................................................35

*Ins. Concepts & Design, Inc. v. Healthplan Services, Inc.*,
785 So. 2d 1232 (Fla. 4th DCA 2001) .............................................................26

*inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*,
2021 WL 252823 (Del. Super. Ct. Jan. 26, 2021) ........................................... 31

*In re January 2021 Short Squeeze Trading Litig.*,
76 F.4th 1335 (11th Cir. 2023) ..........................................................................21

*Jenkins v. Miami Dade Cnty.*,
688 F. Supp. 3d 1240 (S.D. Fla. 2023) (Bloom, J.) ...................................... 13

*Jones v. Unity Behav. Health, LLC*,
2021 WL 5495578 (11th Cir. Nov. 23, 2021)................................................... 14

*Kanen v. BBQ Holdings, Inc.*,
2024 WL 5508197 (S.D. Fla. Nov. 8, 2024).....................................................29

*Kavanaugh v. Miami-Dade Cnty.*,
775 F. Supp. 2d 1361 (S.D. Fla. 2011) ............................................................ 15

*Kingfishers L.P. v. Finesse US, Inc.*,
2024 WL 4625650 (Del. Ch. Oct. 30, 2024) ................................................... 30

*Kuppinger v. JM.JZ Enterprises, Inc.*,
2022 WL 2341240 (S.D. Fla. May 9, 2022) .....................................................23

*Kuroda v. SPJS Holdings, L.L.C.*,
971 A.2d 872 (Del. Ch. 2009)............................................................................33

*Lambert v. Alabama Dep't of Youth Servs.*,
150 F. App'x 990 (11th Cir. 2005) ....................................................................... 9

*Lapham v. Walgreen Co.*,
88 F.4th 879 (11th Cir. 2023) ................................................................................ 20

*Latrece Lockett v. Choice Hotels Int'l, Inc.*,
315 Fed. Appx. 862 (11th Cir. 2009) ....................................................................... 1

*Leonardi v. City of Hollywood*,
715 So. 2d 1007 (Fla 4th DCA 1998) ..................................................................... 28

*Lingle v. Dion*,
776 So. 2d 1073 (Fla. 4th DCA 2001) .................................................................... 19

*Llanso v. SHEDDF2-FL3, LLC*,
346 So. 3d 1221 (Fla. 3d DCA 2022) ..................................................................... 23

*Lorillard Tobacco Co. v. Alexander*,
123 So.3d 67 (Fla. 3d DCA 2013) .......................................................................... 34

*Luthra v. Univ. of Miami*,
822 F. Supp. 3d 1299 (S.D. Fla. 2026) ..................................................................... 7

*M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*,
982 F.3d 1333 (11th Cir. 2020)......................................................................... 32, 33

*Mancinelli v. Davis*,
217 So. 3d 1034 (Fla. 4th DCA 2017) .................................................................... 35

*Marchisio v. Carrington Mortg. Servs., LLC*,
919 F.3d 1288 (11th Cir. 2019).............................................................................. 25

*Market America, Inc. v. Google, Inc.*,
2010 WL3156044 (D. Del. Aug. 9, 2010) .............................................................. 30

*Maunsell v. Am. Gen. Life & Acc. Ins. Co.*,
707 So. 2d 916 (Fla. 3d DCA 1998) ....................................................................... 30

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*,
761 So. 2d 306 (Fla. 2000).................................................................................... 22

*McCoy v. Sandals Resorts Int'l, Ltd.*,
2019 WL 6130444 (S.D. Fla. Nov. 19, 2019) (J. Bloom) ........................................ 21

*MCM Ent., Inc. v. Diaz World Trade Grp.*,
2024 WL 2833649 (S.D. Fla. Jan. 30, 2024) .......................................................... 30

*McQueen v. Ala. Dep't Transp.*,
769 F. App'x 861 (11th Cir. 2019) ................................................................. 9

*Med-Stop, Inc. v. Vandutch, Inc.*,
2025 WL 26731 (S.D. Fla. Jan. 3, 2025) ....................................................... 31

*Mendoza v. Borden, Inc.*,
195 F.3d 1238 (11th Cir. 1999).................................................................... 11

*MicroStrategy Inc. v. Acacia Rsch. Corp.*,
2010 WL 5550455 (Del. Ch. Dec. 30, 2010)................................................ 30

*Mikov v. Village of Palm Springs*,
2025 WL 1312506 (S.D. Fla. Mar. 15, 2025)................................................ 13

*Mitchell v. Pope*,
189 F. App'x 911 (11th Cir. 2006) ............................................................... 13

*Monaghan v. Worldpay Inc.*,
955 F.3d 855 (11th Cir. 2020)...................................................................... 16

*MRPC Christiana LLC v. Crown Bank*,
2017 WL 6606587 (Del. Super. Ct. Dec. 26, 2017) ..................................... 25

*Mulhall v. Advance Security, Inc.*,
19 F.3d 586 (11th Cir. 1994)......................................................................... 9

*Myers v. 3073 Horseshoe Drive, LLC*,
2024 WL 4040834 (M.D. Fla. Sept. 4, 2024)............................................... 27

*NACCO Indus., Inc. v. Applica Inc.*,
997 A.2d 1 (Del. Ch. 2009)........................................................................... 34

*Nat'l. Auto Lenders, Inc. v. SysLOCATE, Inc.*,
686 F.Supp.2d 1318 (S.D. Fla. 2010) ......................................................... 24

*Nat'l R.R. Passenger Corp. v. Morgan*,
536 U.S. 101 (2002)..................................................................................... 10

*Nview Health, Inc. v. David V.*,
2022 WL 16923585 (M.D. Fla. Nov. 14, 2022) ........................................... 27

*Padilla v. Padilla*,
278 So. 3d 333 (Fla. 3d DCA 2019) ............................................................ 30

*Palacios v. Almod Diamonds, Ltd., Inc.*,
2024 WL 124870 (S.D. Fla. Jan. 11, 2024) ...................................................... 18

*Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*,
2015 WL 2198470 (S.D. Fla. May 11, 2015) .................................................... 27

*Perez v. Scottsdale Ins. Co.*,
2020 WL 607145 (S.D. Fla. Feb. 7, 2020) ....................................................... 31

*Radtka v. Wal-Mart Stores, Inc.*,
2019 WL 9075961 (S.D. Fla. Oct. 11, 2019) ...................................................... 8

*Reeves v. C.H. Robinson Worldwide, Inc.*,
594 F.3d 798 (11th Cir. 2010) .............................................................. 10, 11

*Renovaro Inc. v. Gumrukcu*,
2025 WL 3134533 (Del. Ch. Nov. 7, 2025) ..................................................... 34

*Rorie v. Sch. Bd. of Palm Beach Cnty.*,
2022 WL 22996882 (S.D. Fla. Aug. 22, 2022) ................................................. 17

*Rorie v. Sch. Bd. of Palm Beach Cnty.*,
2024 WL 51008 (S.D. Fla. Jan. 4, 2024) ....................................................... 17

*Roth v. Sotera Health Co.*,
2024 WL 4260649 (Del. Ch. Sept. 23, 2024) .................................................. 23

*Rowell v. Gestamp Alabama, LLC*,
2018 WL 4954071 (N.D. Ala. Oct. 12, 2018) .................................................. 12

*Saintfleur v. Shulkin*,
2017 WL 11724910 (N.D. Ga. Dec. 19, 2017) ................................................. 13

*Sanz v. Am. Soc'y of Composers & Publishers*,
2019 WL 13237013 (S.D. Fla. Aug. 7, 2019) .................................................. 8, 9

*Schmidt v. Disney Parks, Experiences & Prods., Inc.*,
721 F. Supp. 3d 1314 (M.D. Fla. 2024), *aff'd* 2025 WL 1826050 (11th
Cir. July 2, 2025) ........................................................................... 16

*Scirotto v. City of Fort Lauderdale*,
2023 WL 11814856 (S.D. Fla. Sept. 22, 2023) ................................................ 24

*Senter v. JPMorgan Chase Bank, N.A.*,
810 F. Supp. 2d 1339 (S.D. Fla. 2011) ......................................................... 25

*Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Sys. Inc.*,
2007 WL 9706466 (S.D. Fla. June 19, 2007) .............................................................. 28

*SFM Holdings Ltd. v. Banc of Am. Secs., LLC*,
764 F.3d 1327 (11th Cir. 2014) ................................................................................. 34

*SIG, Inc. v. AT & T Digital Life, Inc.*,
971 F. Supp. 2d 1178 (S.D. Fla. 2013) ...................................................................... 32

*Singleton v. Pub. Health Tr. of Miami-Dade Cnty.*,
725 F. App'x 736 (11th Cir. 2018) ............................................................................ 20

*Smart v. City of Miami Beach, Fla.*,
933 F. Supp. 2d 1366 (S.D. Fla. 2013), *aff'd* 567 F. App'x 820 (11th
Cir. 2014) ................................................................................................................ 1, 10

*Starks v. City of Miami Gardens*,
No. 23-CV-23851, 2024 WL 2721883 (S.D. Fla. May 28, 2024) (J.
Bloom)......................................................................................................................... 20

*State, Dep't of Fin. Servs. v. Peter R. Brown Const., Inc.*,
108 So. 3d 723 (Fla. 1st DCA 2013) ......................................................................... 19

*Stump-Wolfe v. Wal-Mart Stores, Inc.*,
2019 WL 5102275 (S.D. Fla. Oct. 11, 2019)............................................................... 9

*Succar v. Dade Cnty. Sch. Bd.*,
229 F.3d 1343 (11th Cir. 2000)................................................................................... 12

*Teratech USA, Inc. v. Digital Beauty Grp., LLC*,
2021 WL 9566158 (S.D. Fla. Nov. 22, 2021).............................................................. 30

*Terry v. Carnival Corp.*,
2014 WL 11804563 (S.D. Fla. Feb. 12, 2014) ........................................................... 29

*Thompson v. City of Miami Beach*,
990 F. Supp. 2d 1335 (S.D. Fla. 2014) ................................................................. 10, 12

*Tillett v. BJ's Wholesale Club, Inc.*,
2010 WL 11507322 (M.D. Fla. July 30, 2010) .......................................................... 19

*Tonkyro v. Sec'y, Dep't of Veterans Affairs*,
2024 WL 2846356 (M.D. Fla. June 5, 2024)............................................................... 16

*Topp, Inc. v. Uniden Am. Corp.*,
   513 F. Supp. 2d 1345 (S.D. Fla. 2007) .......................................................................... 30

*Uppal v. Hosp. Corp. of Am.*,
   482 F. App'x 394 (11th Cir. 2012) ........................................................................... 8, 15

*Usai v. Club Mgmt. Miami II, LLC*,
   801 F. Supp. 3d 1295 (S.D. Fla. 2025) ......................................................................... 11

*Verna v. Pub. Health Tr. of Miami-Dade Cnty.*,
   539 F. Supp. 2d 1340 (S.D. Fla. 2008) ......................................................................... 14

*Whirlpool Corp. v. Cabri*,
   2022 WL 1421126 (D. Del. May 5, 2022) ...................................................................... 21

*Whiteside v. New S. Express, LLC*,
   2025 WL 2797160 (N.D. Ala. Sept. 29, 2025) ............................................................... 12

*WIA Holdings, LLC v. Scot. Am. Cap.*,
   2026 WL 1204494 (Del. Ch. Jan. 20, 2026) ................................................................... 35

*Windsor I, LLC v. CWCapital Asset Mgmt. LLC*,
   238 A.3d 863 (Del. 2020) .............................................................................. 26, 27, 28

*Wolicki-Gables v. Drs. Same Day Surgery Ctr., Ltd.*,
   216 So. 3d 665 (Fla. 2d DCA 2017) ............................................................................. 19

*Zarrella v. Pac. Life Ins. Co.*,
   755 F. Supp. 2d 1218 (S.D. Fla. 2010) ......................................................................... 30

**Rules/Statutes**

21 U.S.C. § 331(a) ..................................................................................................... 19

21 U.S.C. § 353(b)(1) ................................................................................................. 19

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1, 3

Fed. R. Civ. P. 12(f) ................................................................................................... 19

Fed. R. Evid. 201(b)(2) ................................................................................................ 9

Fla. Admin. Code R. 64B8-9.012 ................................................................................... 18

Fla. Stat. § 448.102(3) .................................................................................... 2, 17, 18, 20

Fla. Stat. § 456.47 ..................................................................................................... 18

Fla. Stat. § 458.331(1)(q), (m), (g), (nn) ............................................................ 19

Fla. Stat. § 458.336 ................................................................................................. 19

Fla. Stat. §760.11(1) .................................................................................................. 9

## **Other Authorities**

13 Williston on Contracts § 38:7 (4th ed.) ........................................................... 23

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants eMed, LLC, eMed Population Health, Inc., Michael Ferro, and Justin Dearborn move to dismiss Plaintiff's Complaint with prejudice.[1]

## PRELIMINARY STATEMENT

Though Plaintiff purports to assert 27 statutory, contractual, and common law claims, her gripe can ultimately be distilled to the following: After executing a series of transactions that converted Plaintiff's former employer into a C-Corp and infused the company with over $100 million in equity, another woman—Linda Yaccarino, former CEO of X—was named CEO of the new entity instead of Plaintiff.[2] Though Plaintiff was an at-will employee whom eMed could freely terminate rather than finding a role for in the new organization (eMed Population Health, Inc.), it instead offered her the prestigious role of President, an executive title accompanied by a proposed grant of significant stock options in the new entity, among other sizable remuneration.[3] Plaintiff refused that role and was subsequently terminated for cause.

Plaintiff now claims that she was discriminated against because she is a woman. However, she admits that another woman (with legitimate executive experience) was named CEO instead of her, so she cannot establish discrimination or retaliation on this basis. Her post-hoc allegations that eMed was a hostile work environment consist of a handful of off-color remarks by Defendant Ferro, most of which were not even directed at her. Title VII (and the state and local discrimination laws modeled after it) is not a "general civility code" and "simple teasing . . . offhand comments, and isolated incidents" like Plaintiff alleges "do not constitute a hostile work environment."[4]

Plaintiff also fails to adequately plead that she was terminated or suffered any adverse

---

[1]   Putative Defendants eMed Weight Loss, LLC and eMed Population Health, LLC are inactive entities and cannot be served, sued, or participate in this action. The eMed corporate family group is collectively referred to herein as "eMed."

[2]   Compl. ¶¶ 1, 82, 84.

[3]   Compl. ¶¶ 1, 86.

[4]   *Smart v. City of Miami Beach, Fla.*, 933 F. Supp. 2d 1366, 1378 (S.D. Fla. 2013), *aff'd* 567 F. App'x 820 (11th Cir. 2014) (quoting *Latrece Lockett v. Choice Hotels Int'l, Inc.,* 315 Fed. Appx. 862, 865 (11th Cir. 2009)).

action in retaliation for "asserting her legal rights," *i.e.*, sending a legal letter on July 22, 2025 objecting to the "Change of Position" letter,[5] or for "whistleblowing." Plaintiff's July 22nd letter was completely silent as to any instance of discrimination, so it does not even qualify as protected activity, and it was sent *after* most of the alleged adverse actions. Meanwhile, Plaintiff does not allege any violation by any Defendant that could support a claim under the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102 (3) (the "FPWA").[6] Instead, she merely alleges that months before her termination, Defendant Dearborn stated that "Defendants needed to 'figure out how to prescribe'" a GLP-1 agonist (a weight loss drug, such as Wegovy) to a certain individual and confirmed that employees were "working to solve the [] problem."[7] She provides no supporting facts for her conclusory assertion that this individual "did not qualify" for a prescription, and her allegations do not establish that Defendants directed her (or anyone else) to illegally prescribe a GLP-1 agonist, or that any GLP-1 agonist was ever illegally prescribed or dispensed. And while she claims in a conclusory fashion that she "objected to, or refused to participate in" such activities, her Complaint provides no details whatsoever concerning her alleged objections that would allow the Court to infer that they were the but-for cause of her termination (or that they even occurred).[8] Plaintiff is a businesswoman, not a licensed medical professional, and her laundry list of inapplicable statutes and regulations in support of her FPWA claim exposes her lack of understanding as to what conduct is actually prohibited in this context.

Plaintiff's remaining counts aver that she was deprived of bonus payments under an unadopted, unexecuted Transaction Bonus Plan (the "Draft Plan") drafted by the entity that employed her as CEO prior to the conversion, eMed Weight Loss, LLC. Her offer of employment

---

[5]  Compl. ¶ 95.
[6]  *See Gessner v. S. Co.*, 2026 WL 1488160, at *8 (Fla. May 28, 2026).
[7]  Compl. ¶ 76.
[8]  *Id.* ¶¶ 78, 266.

for that role was accompanied by an unexecuted copy of the Draft Plan, which would have provided for bonuses to employees selected for participation *if* a "Sale Event," as defined, occurred.[9] The Draft Plan provided that it would be effective "as of the date of the Plan's adoption by the Compensation Committee of the Board," an event which she does not allege ever occurred, foreclosing her claims. Ex. 2, Art. 1. Plaintiff cannot enforce the Draft Plan because it was not a binding agreement. But even if it were, its mandatory forum selection clause (Ex. 2, Art. 5.11) requires that "any suit, action, or proceeding with respect to the Plan or any Award Agreement. . . shall be resolved only in the courts of the State of Delaware or the United States District court for the District of Delaware[.]" Therefore, all claims "with respect to the Plan" (*i.e.*, Counts XIV, XV, XVIII-XXIII, XXV) must be dismissed, as Plaintiff can only assert them in Delaware.

Further, as Plaintiff admits, the Draft Plan's definition of a Sale Event clearly excluded the July 2025 corporate conversion, and no Sale Event ever occurred to trigger an entitlement to bonuses.[10] Therefore, Plaintiff cannot establish any breach based on her failure to receive a transaction bonus, even *if* she could establish the Draft Plan was a binding agreement, and even *if* these claims were properly before the Court. In any event, her allegation that Defendants engineered a sophisticated $300 million-dollar transaction purely to deprive her of a hypothetical transaction bonus is facially implausible.[11] Her attempts to recover bonuses that are unavailable to her in contract through conclusory, kitchen-sink equitable and tort claims fail and are belied by her own allegations concerning the Draft Plan.

The Complaint should be dismissed with prejudice.

---

[9]   True and correct copies of the employment letter transmitting the Draft Plan and the Draft Plan are attached hereto as **Exhibits 1 and 2**, respectively. *See Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal.").

[10]   Compl. ¶¶ 89, 322-324.

[11]   *Id.*

## FACTUAL BACKGROUND

eMed is a leading digital healthcare company specializing in supervised weight management services. Compl. ¶ 40. Defendant Ferro is eMed, LLC's Co-Founder and holds equity in eMed, LLC. *Id.* ¶ 15. Defendant Dearborn is eMed, LLC's Executive Chairman *Id.* ¶ 18.

**i.      Overview of Plaintiff's Employment and the Draft Transaction Bonus Plan**

Plaintiff joined eMed as Executive Vice President, Marketing and Enterprise Partnerships for eMed Enterprise, LLC on June 26, 2024. *Id*. ¶¶ 43-44. On August 8, 2024, eMed Weight Loss, LLC made Plaintiff a new offer of at-will employment, to serve as its CEO (the "August 2024 Employment Letter"). *Id*. ¶ 47. This offer referred to and attached an unexecuted draft "Transaction Bonus Plan" (the "Draft Plan"). *Id*. ¶¶ 48, 50; Ex. 1 and 2. The August 2024 Employment Letter stated, "You will be eligible to participate in the attached eMed Weight Loss LLC Transaction Bonus Plan [ ], **a draft** of which is attached." Ex. 1 ¶ 6 (emphasis added).

The Draft Plan states that it "shall be effective as of the date of the Plan's adoption by the Compensation Committee of the Board[.]" Ex. 2, Art. 1. Other key terms of the Draft Plan for purposes of this Motion include the following (Ex. 2; Compl. ¶¶ 49-50, 89, 322, 326):

- Article 4.1 provides that "[p]articipation in the Plan shall be limited to those Participants selected by the Administrator from time to time, and no employee or service provider of the Company Group shall have any right to be selected as a Participant."

- Article 4.3 of the Plan provides for payments of Bonus Amounts to participants upon the Settlement Date, which is defined as the consummation of a "Sale Event."

- Article 2.24 defines qualifying "Sale Events" and excludes any transactions effected solely to change the Company's organizational form or structure without changing ownership.[12]

---

[12] "In no event shall a Sale Event be deemed to include (i) any transaction effected solely for the purpose of changing, directly or indirectly, the form of organization or the organizational structure of the Company or transferring securities or assets of the Company to any Person (whether a corporation, limited liability company or otherwise) that is a wholly-owned subsidiary of, parent of, equity interest holder of, or is controlled by or under the common control of any Person described in this clause (i) that does not directly or indirectly change the ownership of the Company, or (ii) a transaction following which the holders of voting equity securities of the Company prior to such transaction

4

- Article 4.4 provides for forfeiture of any Bonus Amounts upon termination.

- Pursuant to Article 5.4, the Compensation Committee of the Board reserved the unfettered right "to amend or terminate, in whole or in part, any or all of the provisions of the Plan[.]"

- Article 5.11 contains a mandatory forum selection clause requiring all actions "with respect to the Plan or any Award Agreement" to be brought in Delaware.

Plaintiff accepted the employment offer set forth in the August 2024 Employment Letter. *Id.* ¶ 51. As CEO of eMed Weight Loss, LLC, she reported to Ferro and Dearborn (after he re-joined eMed in September 2024). Compl. ¶¶ 16, 19.

In September 2024, Plaintiff's then-employer, eMed Weight Loss, LLC changed its name to eMed Population Health, LLC. *Id.* ¶ 11. On June 28, 2025, that entity was restructured and converted into eMed Population Health, Inc., a Delaware C-corporation, to support a $300 million equity raise and position the Company for future growth (the "Conversion"[13]). *Id.* ¶ 82. This entity received a $100 million investment from Aon. *Id.* ¶ 56. Plaintiff admits that the Conversion did not constitute a "Sale Event" under the Draft Plan. *Id.* ¶ 89.

Linda Yaccarino (a woman), former CEO of X, was ultimately named CEO of the post-Conversion entity. *Id.* ¶ 1. eMed had no obligation to find Plaintiff, an at-will employee, any role in the new entity. However, on July 9, 2025, eMed Population Health, Inc. presented Plaintiff with the Change of Position Letter, offering her the executive role of President, reporting to Dr. Patrice Harris, eMed's Co-Founder and CEO at that time. *Id.* ¶ 84.[14] The Change of Position Letter included a proposed grant of 500,000 stock options, under a future incentive plan. *Id.* ¶ 86.

---

continue to own at least twenty percent (20%) of the voting equity securities of the Company or the buyer after such transaction." *Id*.

[13]   The Conversion included the consolidation of holding company assets, facilities, intellectual property, and employees into a new C-Corp. Most of these assets predated Plaintiff's employment, and Defendants dispute that Plaintiff played any material role in the Conversion or attracting Aon investment.

[14]   Dr. Harris was the first black female President of the American Medical Association. *See* https://www.ama-assn.org/about/authors-news-leadership-viewpoints/patrice-harris-md-ma.

Plaintiff rejected the offer to serve as President. *Id.* ¶¶ 90-91. On July 22, 2025, Plaintiff sent written correspondence notifying defendants that she had retained legal representation. *Id.* ¶ 95. On July 23, 2025, eMed commissioned a forensic analysis of Plaintiff's corporate email account. This analysis revealed that Plaintiff had violated company policies by forwarding confidential and proprietary company information to her personal email. *Id.* ¶¶ 99–101. Consequently, Defendants terminated Plaintiff's employment for cause on July 28, 2025. *Id.*

**ii.      Plaintiff's Post-Hoc Discrimination Allegations**

Plaintiff never raised any discrimination concerns during the ordinary course of her employment (despite holding a leadership role, which gave her a natural platform to do so). *See generally* Compl.; *id.* ¶ 1. Her present allegations of gender-based discrimination are that:

a) Ferro allegedly. . .

> 1) Used a derogatory sex-based term (not directed at Plaintiff) during team meetings. *Id.* ¶ 59.
> 2) Made a single comment regarding Plaintiff's appearance. *Id.* ¶ 60.
> 3) Made a comment about Plaintiff's personality. *Id.* ¶ 61.
> 4) Made two comments about the appearance of various other eMed employees. *Id.* ¶ 62.

b) eMed Population Health, Inc., the post-Conversion entity, declined to hire Plaintiff as CEO and instead installed another woman, Linda Yaccarino, former CEO of X Corp.  *Id.* ¶ 1.

c) eMed recommended retention bonuses exclusively for certain unspecified male employees. Plaintiff pleads no further details concerning these alleged recommendations. *Id.* ¶ 81.

**iii.     Plaintiff's Retaliation and Whistleblower Allegations**

Plaintiff alleges that she was retaliated against for sending the July 22, 2025 letter objecting to the decision not to name her CEO of the new entity. *Id.* ¶¶ 42, 95. A true and correct copy of that letter is attached hereto as **Exhibit 3**. It is silent as to any act of discrimination; it merely speculates that "we have substantial grounds to believe that the actions leading to this separation were motivated by other improper factors which give rise to further significant claims under both state and federal law." *Id.* at 1-2. Plaintiff alleges that Ferro called her that night regarding the

6

letter, and noted that he could fire her any time (she was an at-will employee). Compl. ¶ 95.

Plaintiff further alleges that on May 11, 2025, Dearborn communicated to Plaintiff that "**Defendants** needed to 'figure out how to prescribe'" a GLP-1 agonist to a certain individual, and on May 12, 2025, confirmed that employees were "working to solve the [] problem." Compl. ¶ 76 (emphasis added). Plaintiff identifies no further "directives" by any Defendant to illegally prescribe or dispense GLP-1 agonists, and does not allege that the individual in question ultimately received a prescription, and if so, whether it was through impermissible means, or whether the "problem" had been properly "solved". *See id.* She also does not allege any manner in which she was "pressured" to assist in procuring medication for anyone, let alone any directive to violate any law to accomplish this. *See id.* ¶ 75. Nor does she allege any details concerning her assertion that she "objected to, or refused to participate in" any such directive or activities. *Id.* ¶ 78, 266.

### **ARGUMENT**

### I. **PLAINTIFF FAILS TO STATE CLAIMS FOR DISCRIMINATION OR RETALIATION UNDER TITLE VII, FCRA, OR MDHRO (COUNTS I–IX, XI– XIII).**

Claims under the FCRA and MDHRO, which are modeled after Title VII, are analyzed under the Title VII standard, with reference to federal opinions construing Title VII. *See, e.g.*, *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998); *Luthra v. Univ. of Miami*, 822 F. Supp. 3d 1299, 1306 (S.D. Fla. 2026); *Doe v. Miami Gardens Square One, Inc.*, 2025 WL 81528, at *25–26 (S.D. Fla. Jan. 13, 2025) (Bloom, J.). Defendants, therefore, brief these claims together. The federal, state, and local claims fail for the same reasons, including because: 1) another woman became CEO, and the Draft Plan was universally extinguished by the Conversion, so Plaintiff cannot establish disparate treatment; 2) the stray inappropriate comments she references were not severe or pervasive; 3) she fails to allege any protected activity since her July

22nd letter was silent as to any act of discrimination; and 4) she fails to demonstrate any adverse action in retaliation for that letter, sent *after* her "change of position." Compl. ¶ 84, 95, 223.

### A.     Plaintiff Fails to State Claims for Gender Discrimination (Counts I–III).

To state a claim of disparate treatment, Plaintiff must allege facts showing that eMed treated her less favorably than similarly situated male employees because she is a woman. *See Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012). Instead, she alleges that Linda Yaccarino, another woman, was promoted to the role of CEO in the post-Conversion eMed Population Health, Inc., instead of Plaintiff. Compl. at ¶¶ 1, 74. This claim therefore fails as a matter of law. *See Uppal*, 482 F. App'x at 396 (affirming dismissal of disparate impact claim where plaintiff failed to describe how alleged comparator employees were outside her protected class); *Colson v. Wal-Mart Stores, Inc.*, 2019 WL 5102173, at *3 (S.D. Fla. Oct. 11, 2019) (dismissing gender discrimination claim based on conclusory allegations that plaintiff was denied promotional opportunities based on gender); *Radtka v. Wal-Mart Stores, Inc.*, 2019 WL 9075961, at *3 (S.D. Fla. Oct. 11, 2019) (same); *Sanz v. Am. Soc'y of Composers & Publishers*, 2019 WL 13237013, at *4 (S.D. Fla. Aug. 7, 2019) (dismissing claim because employee failed to allege he was replaced by someone outside of his protected class); *Griffith v., Ga. Cyber Academy*, 2026 WL 1450484, at *6 (N.D. Ga. Jan. 30, 2026) (dismissing failure to promote claim where both alleged comparators who were promoted over plaintiff were woman).

Plaintiff's vague and conclusory allegation that "Defendants recommended and pursued retention bonuses exclusively for male employees" (Compl. ¶¶ 121, 138, 156) is devoid of sufficient factual matter to withstand dismissal. *See Uppal*, 482 F. App'x at 396. Here, Plaintiff pleads neither a valid comparator, nor direct evidence of discrimination, warranting dismissal. *See Arafat v. Sch. Bd. of Broward Cnty.*, 549 F. App'x 872, 874 (11th Cir. 2013) (affirming dismissal of complaint where plaintiff failed to sufficiently allege younger male comparators); *Drisin v. Fla.*

*Int'l Univ. Bd. of Trs.*, 2017 WL 3505299, at *12 (S.D. Fla. June 27, 2017). Plaintiff does not allege any particulars concerning the alleged bonuses or the male employees involved that would allow the Court to reasonably infer that eMed acted with discriminatory intent. *See* Compl. ¶ 121, 138, 156; *Stump-Wolfe v. Wal-Mart Stores, Inc.*, 2019 WL 5102275, at *3 (S.D. Fla. Oct. 11, 2019) (dismissing disparate treatment count based on conclusory allegations). The Eleventh Circuit has explained that a similarly situated comparator for purposes of a disparate treatment claim "will have engaged in the same basic conduct (or misconduct) as the plaintiff, ... will have been subject to the same employment policy, guideline, or rule as the plaintiff, ... will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff, and ... will share the plaintiff's employment or disciplinary history[.]" *Sanz*, 2019 WL 13237013, at *4 (quoting *McQueen v. Ala. Dep't Transp.*, 769 F. App'x 861, 821–22 (11th Cir. 2019)). Plaintiff alleges no such factual details concerning any male bonus candidate.[15] *See id*.

Further, these conclusory allegations concerning alleged bonuses to male employees fail for the additional reason that Plaintiff did not raise this issue before the EEOC.[16] An employee must file a complaint with the EEOC before she can bring a discrimination suit. *See, e.g.*, Fla. Stat. §760.11(1); *Lambert v. Alabama Dep't of Youth Servs.*, 150 F. App'x 990, 993 (11th Cir. 2005). The scope of the EEOC's investigation of the charge of discrimination limits the scope of the claim that may be brought in court. *Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994). "[N]ew acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355

---

[15]   *E.g.*, Plaintiff does not allege that any of these male employees violated their confidentiality obligations under eMed corporate policy by sending themselves proprietary information like she did. Compl. ¶¶ 99–100.

[16]   *See* (Compl. ¶¶ 121, 138, 156, 175, 193, 211). These Charges are attached as **Composite Exhibit 5**. These may be judicially noticed by the Court pursuant to Fed. R. Evd. 201(b)(2), and may appropriately be attached and considered in connection with this Motion because they are referred to in Plaintiff's Complaint. *See* Compl. ¶¶ 31–34; *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007).

F.3d 1277, 1279–80 (11th Cir. 2004).[17]

Meanwhile, Plaintiff's conclusory suggestion that she was deprived of a transaction bonus because of her gender is implausible on its face and refuted by her acknowledgment that all participation interests in the Draft Plan were extinguished by the corporate Conversion. Compl. ¶ 89. Plaintiff does not allege that any male employee's participation interests in the Draft Plan survived the Conversion. Compl. ¶¶ 121, 138, 156.

**B.      Plaintiff Fails to State Claims for Hostile Work Environment Claims (IV–VI).**

Plaintiff fails to allege gender-based harassment that was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." *Thompson v. City of Miami Beach*, 990 F. Supp. 2d 1335, 1339, 1343 (S.D. Fla. 2014) (dismissing hostile work environment and retaliation claims). The Supreme Court has instructed that "the standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' Properly applied, they will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[O]ffhand comments[] and isolated incidents" like those Plaintiff alleges, "do not constitute a hostile work environment." *Smart*, 933 F. Supp. 2d at 1378; *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) ("Title VII does not prohibit profanity alone[.]"). Courts consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive

---

[17]   *See also Haugabrook v. Cason,* 518 Fed. App'x. 803, 809 (11th Cir. 2013) ("[E]ach instance of failure to promote or refusal to hire is a discrete act of discrimination that constitutes a 'separate actionable unlawful employment practice.'") (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *Fleming v. The Fla. Bar*, 994 F. Supp. 2d 1255, 1260–61 (N.D. Fla. 2014) (dismissing employee's discrimination charge where plaintiff claimed two denials of promotion but administrative charge cited only one).

utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza v. Borden, Inc*., 195 F.3d 1238, 1246 (11th Cir. 1999).

Plaintiff's claims are premised entirely on verbal statements by Ferro that qualify as "mere offensive utterances," not actionable harassment. *See e.g., id*.; *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295, 1323–34 (S.D. Fla. 2025). She alleges no facts that would allow the Court to conclude that Ferro's alleged comments "affected her day-to-day employment." *See Blash v. City of Hawkinsville*, 2018 WL 3150346, at *7 (M.D. Ga. June 27, 2018) (dismissing hostile work environment claim). None of Ferro's remarks can be construed as physically threatening, and the Court need not accept Plaintiff's formulaic labeling of them as "humiliating and degrading." Compl. ¶¶ 173, 191, 209. For example, in *Bardelas v. City of Doral*, 2021 WL 12313738, at *9 (S.D. Fla. Aug. 23, 2021), this Court dismissed a hostile work environment claim, holding that while certain commentary about plaintiff's appearance "may be considered offensive," it was "not physically threatening" and did "not rise to the level of humiliating such that it can be qualified as objectively severe and pervasive harassment that alter the terms and conditions of employment."

Plaintiff focuses primarily on Ferro's "frequent" use of the c-word during work meetings. Compl. ¶¶ 59, 173. Plaintiff does not allege that he ever referred to her (or any other employee) by this term. *See id.* Rather, her allegations demonstrate only general profanity, which is insufficient to establish a hostile work environment. *See Reeves*, 594 F.3d at 809. For example, in *Usai*, 801 F. Supp. 3d at 1323–24, this Court recently dismissed a plaintiff's hostile work environment claims where she alleged that her supervisor called her an "ass face" and made "inappropriate comments to female employees generally." Plaintiff's formulaic and "factually-unsupported assertion" of "frequent disparaging comments" is insufficient to state a Title VII claim. *See Barreth v. Reyes I, Inc.*, 2020 WL 4370137, at *6 (M.D. Ga. Jul. 29, 2020).

11

Plaintiff's allegations that Ferro made isolated comments concerning her appearance or the appearance of others also cannot establish severe or pervasive harassment. *See id.; Bardelas*, 2021 WL 12313738, at *9; *Whiteside v. New S. Express, LLC*, 2025 WL 2797160, at *4 (N.D. Ala. Sept. 29, 2025) (dismissing hostile work environment claim and holding that "expressing curiosity regarding an employee's appearance simply does not amount to legally actionable sexual harassment under existing substantive law."); *Brown v. Railcrew Xpress LLC*, 2022 WL 22894863, at *3 (N.D. Ala. Feb. 15, 2022) (dismissing hostile work environment because "occasional abusive instances" in which coworkers commented on her appearance were "not severe or pervasive enough to be actionable under Title VII.").[18]

To the extent Ferro's alleged statement that Plaintiff "needed to be more of a bitch" can even be construed to relate to her gender (rather than her behavior), she alleges that this statement occurred around July 22, 2025, twelve days after she refused the role offered to her in the post-Conversion entity and less than a week before she was terminated, so it could not plausibly have interfered with her job performance (which was at an end), and she does allege any manner in which this statement, or any other, impacted her work. *See* Compl. ¶¶ 91, 94, 99; *Succar v. Dade Cnty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) ("The plaintiff cannot turn a personal feud into a sex discrimination case."). This is exactly the kind of "mere offhand comment and isolated incident" that cannot support a hostile work environment. *Blash*, 2018 WL 3150346, at *8.

Courts in this circuit routinely dismiss hostile-work-environment claims based on sporadic offensive remarks, even where specifically targeted at the plaintiff. *See, id.; e.g., Thompson*, 990 F. Supp. 2d at 1341 (alleging plaintiff's supervisor called him n-word on multiple occasions);

---

[18]*See also Rowell v. Gestamp Alabama, LLC*, 2018 WL 4954071, at *4 (N.D. Ala. Oct. 12, 2018) (dismissing hostile work environment claim and holding that "a few comments" about plaintiff's appearance and women being "hard-headed" as insufficient to qualify as severe or pervasive).

*Gerbier v. J.R. Eight, Inc.*, 2011 WL 13268707, at *3 (S.D. Fla. Aug. 12, 2011) (granting motion to dismiss hostile work environment claim where plaintiff alleged he was "continually called a 'negro'"). For example, in *Mikov v. Village of Palm Springs*, 2025 WL 1312506, at *6 (S.D. Fla. Mar. 15, 2025), this Court dismissed a hostile work environment claim alleging "about a dozen instances of offensive language lodged against him[,]" including calling him "old," a "pedophile" and a "faggot," and subjecting him to a "sexually explicit insult" on an "unspecified occasion." The Court highlighted the absence of any physical threats or intimidating language, which Plaintiff's Complaint also fails to allege. *Id.*; *see Mitchell v. Pope*, 189 F. App'x 911, 913–14 (11th Cir. 2006) (affirming summary judgment in favor of defendant on hostile work environment claim where most of 16 instances of alleged harassment involved "offensive utterances.").

Finally, Plaintiff cannot rely on any statements or conduct in support of her discrimination claims that do not relate to her gender, such as, her allegation that Ferro denied her resources, or humiliated her by removing her from Aon meetings and telling her subordinates that she had been "over-promising", or her phone call with Ferro on July 22, 2025. Compl. ¶¶ 63–64, 96; *see Saintfleur v. Shulkin*, 2017 WL 11724910, at *3 (N.D. Ga. Dec. 19, 2017) (dismissing claim because plaintiff failed to plead that work environment was hostile based on sex).

### C.     Plaintiff Fails to State Claims for Retaliation (Counts VII–IX).

To state claims for retaliation, Plaintiff must allege that: "(1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Jenkins v. Miami Dade Cnty.*, 688 F. Supp. 3d 1240, 1245 (S.D. Fla. 2023) (Bloom, J.) (quoting *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)); *see also Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir. 2008). Plaintiff fails to adequately allege any protected activity, which is fatal to her claims, and she fails to allege facts to plausibly establish the requisite causal link.

13

Plaintiff contends that she engaged in protected activity when she (i) communicated to Defendants her opposition to her demotion and loss of the transaction bonus plan on July 10, 2025, and (ii) when she "sent a written communication to Defendants on July 22, 2025, opposing Defendants' unlawful employment practices." Compl. ¶¶ 223, 236, 249. Plaintiff does not allege or attach the substance of these communications, so Defendants attach them here as **Exhibits 4 and 3**, respectively. Neither communication complains of, or "asserts any right" to be free from, gender discrimination. The July 10th email (Ex. 4) focuses solely on Plaintiff's opinion that the Change of Position did not fairly value her contributions and does not mention any legal violations or threaten legal action. In the July 22nd email (Exhibit 3), Plaintiff's attorney vaguely avers that "we have substantial grounds to believe that the actions leading to this separation were motivated by other improper factors which give rise to further significant claims under both state and federal laws." *Id*. at 1–2. Neither communication qualifies as protected activity, as neither "explicitly or implicitly communicate[d] a belief that [eMed] was engaged in discrimination or harassment based on the plaintiff's sex." *See Black v. Reynolds*, 150 F. Supp. 3d 1273, 1281 (S.D. Ala. 2015), *aff'd,* 674 F. App'x 851 (11th Cir. 2016); *see also Jones v. Unity Behav. Health, LLC*, 2021 WL 5495578, at *2 (11th Cir. Nov. 23, 2021) ("[P]laintiffs' opposition to their alleged underpayment, without a connection to discrimination, isn't protected activity under Title VII."); *Verna v. Pub. Health Tr. of Miami-Dade Cnty.*, 539 F. Supp. 2d 1340, 1357–58 (S.D. Fla. 2008) (employee's letter failing to specifically complain of discrimination did not constitute protected activity under FPWA).

Plaintiff also fails to adequately allege that she suffered any adverse employment action as a consequence of her July 10th or 22nd communications. She alleges that: Defendants (i) offered her the role of President of eMed Population Health, Inc.; (ii) eliminated the Draft Plan; (iii) restructured her reporting relationship so that she reported to Dr. Patrice Harris, instead of two

14

men (Ferro and Dearborn); (iv) called her to discuss her July 22, 2025 letter; (vi) commissioned a forensic review of Plaintiff's use of company email; and (vii) terminated her employment. Compl. ¶¶ 84, 224, 273, 250. Plaintiff's allegations regarding changes to her role and compensation are readily disposed of because these events occurred *before* Plaintiff sent her July 10th and 22nd correspondence. Compl. ¶ 84. "If the alleged retaliatory conduct occurred before the . . . protected activity, the two events cannot be causally connected." *Calicchio v. Oasis Outsourcing Grp. Holdings, L.P.*, 2022 WL 2761720, at *3 (11th Cir. July 15, 2022). Indeed, the July 9, 2025 Change of Position letter and elimination of the Draft Plan through the June 28, 2025 Conversion were the very reason for Plaintiff's communications. *See* Compl. ¶¶ 223, 236, 249, 456. Therefore, these actions could not have been "retaliatory"— they prompted her complaints, not the other way around. *See id.* For example, in *Uppal*, 482 Fed. Appx. at 397, the Court affirmed dismissal of a retaliation claim because the plaintiff lost her emergency room privileges *prior* to complaining about alleged discrimination, which necessarily defeated causation.[19]

Receiving a phone call from your boss is not an adverse employment action. Compl. ¶¶ 281, 294, 307; *see Kavanaugh v. Miami-Dade Cnty.*, 775 F. Supp. 2d 1361, 1370 (S.D. Fla. 2011) (verbal counselling did not rise to the level of an adverse employment action). As for the forensic investigation, Plaintiff failed to raise this allegation before the EEOC and has not exhausted her administrative remedies as to this issue. *See Fleming*, 994 F. Supp. 2d at 1260–60; Ex. 5. In any event, it is implausible that this forensic investigation was retaliatory, instead of a reasonable corporate response to a legal demand seeking separation from the company. Ex. 3 at 2.

Plaintiff's contention that she was terminated for asserting unspecified "rights" rather than

---

[19]  Though this timing alone is dispositive, the Court also need not accept Plaintiff's conclusory characterization of the offer of the presidency as an "adverse action" or a "demotion" when Plaintiff's allegations make clear that her pre-conversion role of CEO of eMed United Population Health, LLC (*f/k/a* eMed Weight Loss, LLC) necessarily ceased to exist after the July 2025 conversion led to the creation of a distinct legal entity.

because her employing entity and prior role ceased to exist after the Conversion, or because she expressly refused to accept and perform the role that eMed offered her, or because she forwarded proprietary information to her personal email account in violation of her contractual confidentiality obligations under corporate policy, is facially implausible. Compl. ¶¶ 90–91, 100. Her conclusory allegations that eMed's stated reasons for terminating her for cause were pretextual fail. *See Schmidt v. Disney Parks, Experiences & Prods., Inc.*, 721 F. Supp. 3d 1314, 1329 (M.D. Fla. 2024), *aff'd* 2025 WL 1826050 (11th Cir. July 2, 2025). For example, in *Schmidt*, the Court dismissed with prejudice the plaintiff's retaliatory firing claim because the allegations clearly demonstrated that his suspension and termination were related to his noncompliance with the company protocols. The court rejected his claims of pretext as speculative.

> **D.** **Plaintiff Fails to State Claims for Retaliatory Hostile Work Environment (Counts XI, XII, and XIII).**

To state a claim for retaliatory hostile work environment, plaintiff must allege that she: "(1) engaged in protected EEO activity; (2) suffered unwelcome harassment; (3) the harassment was based on protected activity; and (4) the harassment was materially adverse, meaning that it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Tonkyro v. Sec'y, Dep't of Veterans Affairs*, 2024 WL 2846356, at *12 (M.D. Fla. June 5, 2024) (quoting *Monaghan v. Worldpay Inc.*, 955 F.3d 855, 862–63 (11th Cir. 2020)).

Here again, Plaintiff's claims fail for want of any protected activity (*see id.* Exs. 3–4, pp. 13-14 *supra*). These claims also fail to the extent that they are premised on the abandonment of the Draft Plan and the Change of Position, which occurred prior to her July 22nd letter. Compl. ¶ 456; *see Erickson v. Lakeland Regional Medical Ctr., Inc.*, 2022 WL 1487588, at *6 (M.D. Fla. May 11, 2022) (dismissing retaliatory hostile work environment claim where adverse actions occurred before plaintiff engaged in protected activity).

Plaintiff remained employed by eMed for only six days after her attorney sent the July 22nd letter, and she does not allege conduct sufficient to create a retaliatory hostile work environment within this brief period.[20] The only conduct she alleges between July 22nd and July 28th is: 1) the Ferro phone call; 2) requests from eMed for her to remain with the company; 3) a statement by Ferro during a July 22nd meeting; and 4) the forensic investigation. Compl. ¶¶ 96–97, 282. The cited communications between eMed and Plaintiff are insufficient to establish a retaliatory hostile work environment, because they would not dissuade a reasonable worker from making or reporting a charge of discrimination. *See Rorie v. Sch. Bd. of Palm Beach Cnty.*, 2022 WL 22996882, at *8 (S.D. Fla. Aug. 22, 2022) (employer's criticisms of employee and changes to his shifts were not materially adverse to state a retaliatory hostile work environment claim).[21] The forensic investigation was not presented to the EEOC and therefore should not be considered in this action. *See* p. 9, *supra*. Further, Plaintiff does not plausibly allege that this investigation was in retaliation for her July 22nd letter, which did not even mention discrimination. *See* Ex. 3.

## II.     PLAINTIFF HAS NOT PLAUSIBLY ALLEGED A FPWA CLAIM (COUNT X).

The FPWA requires Plaintiff to show that she suffered an adverse employment action because she "objected to, or refused to participate in, any activity, policy, or practice of [eMed] which [was] in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3).[22] Plaintiff alleges that she was offered the role of President of eMed Population Health, Inc. instead of CEO and ultimately terminated because she objected to the procurement of GLP-1 medication for an

---

[20]   Plaintiff's conclusory assertion that the July 10th email was a "protected opposition" is refuted by the text of that email, which references no discrimination. Compl. ¶¶ 284, 297, 310; Ex. 4.

[21]   *Reconsidered on other grounds Rorie v. Sch. Bd. of Palm Beach Cnty.*, 2024 WL 51008, at *13 n.12 (S.D. Fla. Jan. 4, 2024).

[22]   The Florida Supreme Court recently resolved a circuit split to hold that a claim under the FPWA requires an *actual* legal violation, not just the plaintiff's reasonable, good faith belief that one occurred. *See Gessner v. S. Co.*, 2026 WL 1488160, at *8 (Fla. May 28, 2026). Plaintiffs allegations in paragraph 265 that she "reasonably and in good faith believed that the directives" violated applicable laws and regulations are inadequate and immaterial.

ineligible individual. Compl. ¶¶ 2, 74-76, 266-67. Despite her conclusory statement that Defendants "repeatedly directed" her to procure GLP-1 agonists for individuals she alleges, without explanation, did not qualify (*id*. ¶ 72), she specifies only one instance, involving a single individual. As to that person, she alleges that on May 11-12, 2025, Mr. Dearborn communicated that "Defendants" (*not* Plaintiff) "needed to 'figure out how to prescribe'" medication to that person, and that "employees were 'working to solve the [ ] problem.'" *Id*. ¶ 76. This statement cannot reasonably be conflated with a "directive[ ] to bypass clinical protocols." *Id*. ¶ 77. Indeed, it reflects acknowledgment that eMed *could not* simply disregard applicable requirements to issue the prescription. Plaintiff does not allege any facts to establish that Defendants ever *actually* impermissibly prescribed GLP-1 or ordered Plaintiff to do so, and therefore fails to allege any actual legal or regulatory violation. *See Palacios v. Almod Diamonds, Ltd., Inc.,* 2024 WL 124870, at *3 (S.D. Fla. Jan. 11, 2024) (dismissing 448.102(3) claim because activities reported by plaintiff were inactionable); *Butterfield v. JetBlue Airways Corp.*, 2022 WL 291003, at *6 (11th Cir. Feb. 1, 2022) (affirming dismissal of 448.102(3) claim because plaintiff's allegations that employer pressured him to provide testimony did not establish a violation of witness tampering statute).

Further, no statutory or code provision Plaintiff cites supports the existence of an actual legal or regulatory violation by eMed under the facts alleged (*See* Fla. Stat. 448.102(3)):

- **Fla. Stat. § 456.47** requires telehealth providers to follow the same standard of care as in-person providers, and provides that medical history research and physical examination are not required if there is a sufficient alternative evaluation for diagnosis. Plaintiff does not specify any manner in which eMed provided telehealth services that deviated from the standard of care applicable to in-person providers; indeed, she does not allege that eMed provided telehealth services to the relevant individual(s), at all.

- **Fla. Admin. Code R. 64B8-9.012** sets forth standards of care for prescribing obesity drugs, and requires an "initial evaluation" before prescribing or dispensing weight loss drugs. This evaluation may be delegated to a physician assistant or registered nurse. Again, Plaintiff fails to adequately allege that eMed actually prescribed or dispensed any GLP-1 agonist to an individual who had not received and cleared the required evaluation.

18

- **Fla. Stat. § 458.336** enables the Board of Medicine to "adopt rules to establish practice guidelines for physicians to safely prescribe [ ] drugs used to treat obesity." Enabling statutes do not support private legal violations. *See State, Dep't of Fin. Servs. v. Peter R. Brown Const., Inc.*, 108 So. 3d 723, 726 (Fla. 1st DCA 2013); *see also Wolicki-Gables v. Drs. Same Day Surgery Ctr., Ltd.*, 216 So. 3d 665, 673 (Fla. 2d DCA 2017).

- **Fla. Stat. § 458.331(1)(q), (m), (g), (nn)** provide grounds for denial of a medical license or disciplinary action against a physician by the state medical board and department. "This statute merely describes actions on the part of a physician which would result in disciplinary proceedings[,]" and plaintiff identifies no physician involved in the alleged misconduct. *Lingle v. Dion*, 776 So. 2d 1073, 1077 (Fla. 4th DCA 2001) (holding that § 458.331 does not establish a cause of action or protect any individuals).

- **21 U.S.C. §§ 353(b)(1)** provides that specified drugs shall be dispensed only upon licensed practitioner's written prescription or oral prescription that is promptly reduced to writing by the pharmacist. Plaintiff does not allege that any GLP-1 agonist was dispensed without a prescription; rather, she purports to question the prescription decisions, though she is not a licensed physician or pharmacist herself and provides no particulars concerning why any individual(s) were purportedly ineligible for medication. Compl. ¶¶ 76-77.

- **21 U.S.C. § 331(a)** prohibits the introduction of adulterated or misbranded drugs into interstate commerce. Plaintiff alleges no facts suggesting that eMed adulterated or misbranded any GLP-1 agonist, much less that it caused any such drugs to cross state lines. She does not allege that any unqualified individual for whom eMed was working to procure medication were located outside of Florida.[23]

In addition to Plaintiff's failure to identify any violation of law, rule, or regulation by eMed, Plaintiff fails to adequately allege that she objected to any purported violation. She alleges no factual details concerning the timing or manner in which she purportedly communicated her unspecified "objections" to Defendants or their response, or that would allow the Court to infer that such objections were the but-for cause of her termination. *See Harvey v. MD Now*, 2024 WL 6886986, at *10 (S.D. Fla. Mar. 4, 2024) (dismissing FPWA claim because allegations failed to establish causal link between protected activity and termination); *Tillett v. BJ's Wholesale Club, Inc.*, 2010 WL 11507322, at *9 (M.D. Fla. July 30, 2010) (dismissing with prejudice claim under

---

[23] To the extent this Count is not dismissed, Plaintiff alternatively moves to strike the irrelevant sections as immaterial pursuant to Fed. R. Civ. P. 12(f). Plaintiff's difficulty in honing in on any law or regulation that was violated casts further doubt on her vague allegation that she objected.

19

section 448.102(3) because plaintiff failed to adequately allege he objected to or refused to participate in the alleged legal violation).[24] Plaintiff does not allege that these "objections" were contained in her July 10th or 22nd correspondence—they were not, and causation is further undermined by Plaintiff's conflicting (but equally flawed) allegations that she was instead terminated for complaining of gender discrimination. *E.g.*, Compl. ¶¶ 223, 236; *see* Exs. 3, 4. [25] Plaintiff does not allege any objection date, but alleges that Defendant's statements regarding procuring the medicine occurred on May 11-12, 2025, while her termination occurred over two months later on July 28, 2025, which does not allow for an inference of causation based on timing, alone. *See Singleton v. Pub. Health Tr. of Miami-Dade Cnty.*, 725 F. App'x 736, 738 (11th Cir. 2018) (the temporal proximity between the objection and adverse action must be "'very close'").

### III. ANY CLAIMS "WITH RESPECT TO THE PLAN" CAN ONLY BE BROUGHT IN DELAWARE PURSUANT TO ITS FORUM SELECTION CLAUSE (COUNTS XIV, XV, XVII–XXIII, XXV).

As argued *infra* (pp. 22-24), the Draft Plan was never adopted or agreed to, independently requiring dismissal with prejudice of all claims for relief under that document. However, should the Court find that Plaintiff has plausibly established that the Draft Plan constitutes an enforceable agreement between her and eMed Weight Loss, LLC, whom she alleges is eMed Population Health, Inc.'s predecessor (Compl. ¶ 14), then Plaintiff is bound by its mandatory forum selection clause, and must pursue her Plan-related claims in Delaware. Article 5.11 of the Draft Plan provides that "[a]ny suit, action, or proceeding with respect to the Plan or any Award Agreement . . . shall be resolved *only* in the courts of the State of Delaware or the United States

---

[24] *See also Lapham v. Walgreen Co.*, 88 F.4th 879, 893 (11th Cir. 2023) ("the proper causation standard for [ ] FWA retaliation claims is but-for causation."); *accord Starks v. City of Miami Gardens*, No. 23-CV-23851, 2024 WL 2721883, at *5 (S.D. Fla. May 28, 2024) (J. Bloom).

[25] Causation is further refuted by Defendants' professed reasons for terminating plaintiff: forensic investigation revealed she removed proprietary information. Compl. ¶ 456.

District Court for the District of Delaware . . . .”). Ex. 2, art. 5.11. Thus, Counts XIV, XV, XVIII-XXIII, and XXV for breach of contract, promissory estoppel, tortious interference, and fraudulent inducement, all of which seek relief “with respect to the Plan,” should be dismissed pursuant to the doctrine of forum *non conveniens. See McCoy v. Sandals Resorts Int'l, Ltd.*, 2019 WL 6130444, at *4, 15 (S.D. Fla. Nov. 19, 2019) (J. Bloom) (dismissing action based on mandatory forum selection clause, and noting that “forum-selection clauses should control except in unusual cases.”); *Whirlpool Corp. v. Cabri*, 2022 WL 1421126, at *14 (D. Del. May 5, 2022) (holding that “broad” forum selection clause with identical language covering “[a]ny suit, action or proceeding with respect to the Plan or any Award Agreement” means “that the Clause covers more types of claims relating to the 2018 Omnibus Plan than contract claims alone[.]”).

Defendants make their remaining dispositive arguments with respect to claims concerning the Draft Plan to the extent that this Court decline to dismiss those Counts pursuant to Article 5.11.

**IV.     PLAINTIFF'S DUPLICATIVE COMMON LAW CLAIMS PLED UNDER THE WRONG STATE'S LAW SHOULD BE DISMISSED (COUNTS XIV, XV, XVII, XIX, XXI, XXIII, XXV, XXVII).**

Rather than properly apply Florida's choice-of-law principles to determine which state's law governs her common law claims, Plaintiff separately pled duplicative counts under Delaware and Florida law. *In re January 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1346 (11th Cir. 2023) (federal district courts sitting in diversity in Florida apply Florida's choice-of-law rules). The only potential basis for applying Delaware law to any claim is that the unadopted Draft Plan (Ex. 2, art. 5.10) provides that “The Plan shall be governed by the laws of the state of Delaware[.]”

Florida applies the “significant relationship” test for tort claims. For contract claims, Florida applies the law of the state where the contract was executed, in the absence of a choice-of-

law provision. *Coulter v. ADT Sec. Services*, 744 Fed. Appx. 615, 618-19 (11th Cir. 2018).[26] Here, Plaintiff's employment was located in Miami, Florida, which is also where the corporate Defendants have their principal place of business and where all of the activities that form the basis of her claims occurred, including the offer of employment. Compl. ¶ 418, 5, 12; Ex. 1 ¶ 2. Therefore, only those claims that allege that the Plan is a binding agreement and seek relief thereunder may reasonably be subject to Delaware law, *i.e.*, Plaintiff's counts for breach of contract and tortious interference in connection with the Draft Plan (Counts XV, XIX, and XXV). Plaintiff's attempts to assert common law claims for breach of the employment relationship (Count XVII), promissory estoppel (Count XXI), fraudulent inducement (Count XXIII), and civil conspiracy (XXVII) under Delaware law are unfounded, and these claims should be dismissed. Meanwhile, her claim for breach of the Draft Plan under Florida law (Count XIV) should also be dismissed, since the plan is expressly governed by Delaware law.

## V. PLAINTIFF FAILS TO ADEQUATELY ALLEGE THAT THE DRAFT PLAN WAS A CONTRACT OR WAS BREACHED (COUNTS XIV, XV).

Plaintiff's breach of contract claims under the Draft Plan should be dismissed with prejudice because: (1) the Draft Plan was an unexecuted, unadopted *draft* agreement that Plaintiff does not allege was ever adopted (it was not), and (2) even *if* the Company had adopted the Draft Plan, and even *if* the Plan Administrator had selected Plaintiff to participate, Plaintiff admits that no Sale Event occurred to trigger any potential right to a Bonus Amount under the Draft Plan's clear terms. Compl. ¶ 89; Ex. 2. § 2.24. Therefore, she alleges no contract and no breach.

The August 8, 2024 Employment Letter that made Plaintiff CEO of eMed Weight Loss, LLC provided that Plaintiff would be "**eligible** to participate in the attached eMed Weight Loss,

---

[26] "Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000).

LLC Transaction Bonus Plan (the "Plan"), a **draft** of which is attached."[27] A draft agreement is not binding; it is simply part of a negotiation. *Cambridge N. Point LLC v. Boston & Maine Corp.*, 2010 WL 2476424, at *12 (Del. Ch. June 17, 2010) ("[T]he March 6 Draft was just that—a draft, which by definition indicates that the exact terms of the agreement are evolving");[28] *Kuppinger v. JM.JZ Enterprises, Inc.*, 2022 WL 2341240, at *4 (S.D. Fla. May 9, 2022).

Further, "[w]hen the parties to a proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed." 13 Williston on Contracts § 38:7 (4th ed.); *e.g.*, *Roth v. Sotera Health Co.*, 2024 WL 4260649, at *10 (Del. Ch. Sept. 23, 2024); *Llanso v. SHEDDF2-FL3, LLC*, 346 So. 3d 1221, 1221 (Fla. 3d DCA 2022). The Draft Plan specified that it would not become effective until its "adoption by the Compensation Committee of the Board (the '<u>Effective Date</u>')," an event which Plaintiff does not allege ever occurred Ex. 2 at 1. *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So. 2d 51, 56 (Fla. 3d DCA 1982) ("conditions precedent must be at least generally averred in the pleadings"); *AIU Insurance Co. v. Philips Electronics No. Am. Corp.*, 2018 WL 367849, at *10 (Del. Ch. Jan. 11, 2018).

Plaintiff's attempt to argue that Defendants "ratified" the contract or accepted it by conduct fails. Compl. ¶¶ 320, 349. First, the doctrine of ratification is inapplicable because it contemplates a scenario in which a principal or agent with proper authority ratifies a contract created by an agent without authority. *See*, *e.g.*, *Global Capital Partners v. Green Sapphire Holdings, Inc.*, 355 A.3d

---

[27] Ex. 1 ¶ 6. Plaintiff failed to attach the Aug. 8, 2024 Employment Letter or the Transaction Bonus Plan to her Complaint, though she purports to seek contractual and other relief based on these documents, so Defendants attaches them to this Motion as Exhibits 1 and 2 respectively. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); Compl. ¶¶ 318, 355.

[28] The substantive law of Florida and Delaware are materially the same for purposes of the dispositive arguments Defendants raise in this Motion. In an abundance of caution, Defendants provide supporting case authorities from each state throughout this Motion where Plaintiff asserts claims under the laws of both (though the Court should dismiss all claims "with respect to the Plan" without reaching their merits, pursuant article 5.11, *see supra pp.* 20-21).

23

120, 164-65 (Del. Ch. 2026); *Nat'l. Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F.Supp.2d 1318, 1323 (S.D. Fla. 2010). Plaintiff does not allege that any eMed agent lacking in authority purported to enter into the Draft Plan on its behalf, and only the "Compensation Committee of the Board" had the power to adopt the Draft Plan and make it effective. Ex. 1, Art. 1; Compl. ¶¶ 338-339, 365. Nor does the conduct that Plaintiff points to as reflecting Defendants' "acceptance" of the Draft Plan—Plaintiff's spousal consent form (*id*. ¶¶ 320, 349) and a representation to AON in connection with the Conversion that employee equity offers were reflected in the company's records (*id*. ¶¶ 332, 359)—change the contingent and non-binding nature of the Draft Plan.

Even if Plaintiff could establish that the Draft Plan were a binding agreement, she fails to allege that it was breached. In fact, she plainly alleges that it was not. As she acknowledges, transaction bonuses ("Bonus Amounts") only became payable to plan participants upon the consummation of a qualifying "Sale Event," as defined in Article 2.24 of the Draft Plan.[29] Compl. ¶¶ 318, 322. Plaintiff admits that the Conversion was **not** a Sale Event and extinguished the Draft Plan. Compl. ¶¶ 89, 322-23. Thus, she cannot establish that eMed Weight Loss, LLC breached the Draft Plan by failing to provide her with a transaction bonus. *See* Compl. ¶ 340.[30]

## VI.   PLAINTIFF FAILS TO PLEAD ANY DAMAGES RELATED TO A BREACH OF HER EMPLOYMENT RELATIONSHIP (COUNTS XVI, XVII).

As stated in the Aug. 8, 2024 Employment Letter (Ex. 1 ¶ 9), Plaintiff was an at-will employee with no defined term. She pleads no facts that could entitle her to future lost wages or benefits, irrespective of the grounds for her termination (*see Scirotto v. City of Fort Lauderdale*, 2023 WL 11814856, at *7 (S.D. Fla. Sept. 22, 2023)), and no facts concerning any unpaid wages

---

[29] "Sale Event" excludes "transactions effected solely to change the form of organization or organizational structure without changing ownership." Compl. ¶ 322; Ex. 2., art. 2.24.

[30]  In addition to the admitted absence of any Sale Event, Plaintiff does not allege that the Plan Administrator ever selected her to participate in the Draft Plan. See Ex. 2, art. 4.1 ("[p]articipation in the Plan shall be limited to those Participants selected by the Administrator [ ] and no employee or service provider of the Company Group shall have any right to be selected as a Participant.")

that accrued during the term of her employment that would support a claim for back pay. Compl. ¶¶ 368, 381. "Emotional distress, mental anguish, loss of dignity, and other intangible damages" are also unavailable for a breach of contract (and her assertions concerning "tortious conduct" fail for reasons discussed *infra* (pp. 32-35). *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1314 (11th Cir. 2019); Compl. ¶¶ 367, 380.

Plaintiff's allegations that eMed Defendants breached the August 8, 2024 Employment Letter by demanding repayment of the $75,000 relocation bonus also cannot support a claim for damages, because she has not repaid or been required to pay that amount.[31] Rather, all she alleges is that Defendants "demanded immediate repayment" of the relocation bonus upon her termination one year ago. Compl. ¶ 102. Thus, she is merely anticipating that she may become liable for this bonus at some unknown time in the future, should eMed successfully prosecute a claim against her for recovery of the relocation bonus (which would require eMed to demonstrate that she was properly terminated for cause, in any event). This prediction is too speculative to support a claim for damages. *See Casey v. Bank of Am., N.A.*, 2014 WL 12580515, at *2 (S.D. Fla. Mar. 12, 2014); *cf. Gulf Grp. Holdings, Inc. v. Coast Asset Mgmt. Corp.*, 516 F. Supp. 2d 1253, 1268 (S.D. Fla. 2007) (mere demand for payment insufficient to trigger right to indemnification).

## VII.   PLAINTIFF FAILS TO STATE CLAIMS FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNTS XVIII, XIX).

A claim for breach of the implied covenant must be tied to a particular term of an actual agreement. *See MRPC Christiana LLC v. Crown Bank*, 2017 WL 6606587, at *4 (Del. Super. Ct. Dec. 26, 2017); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1361-62 (S.D. Fla.

---

[31]   The Aug. 2024 Employment Letter (¶ 10) provides: "If you voluntarily terminate or are terminated for cause from the Company within eighteen (18) months after accepting this offer, you agree to repay the Company the full amount of the Relocation Assistance provided to you."

2011) ("a proper pleading of breach of the covenant of good faith and fair dealing necessarily requires the pleading of a valid contract" and "cannot be maintained . . . in the absence of a breach of an express term of a contract."). Counts XVIII and XIX fail because the Draft Plan was an unadopted draft, not an enforceable agreement. *See* pp. 22-24, *supra*; Ex. 2, Art. 1.

Further, even if the Draft Plan were construed as a binding agreement, the implied covenant of good faith and fair dealing cannot modify or override express contract terms. *Bailey v. Tektronix, Inc.*, 2022 WL 4132881, at *7 (D. Del. Sept. 12, 2022), *aff'd*, 2025 WL 1341876 (3d Cir. May 8, 2025); *Ins. Concepts & Design, Inc. v. Healthplan Services, Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001) ("[T]he implied covenant of good faith should not be invoked to override the express terms of the agreement between the parties."). Consequently, a good faith and fair dealing claim "premised on the failure of defendants to pay money due under the contract . . . must fail because the express terms of the contract will control such a claim." *Bailey,* 2022 WL 4132881, at *7.

Plaintiff's assertion that eMed Defendants breached the implied covenant by withholding compensation under the Draft Plan is negated by the express terms of the Draft Plan, which provides that Bonus Amounts are awarded to participants only in the event of a qualifying "Sale Event," and are forfeited upon termination. Ex. 2, Arts. 2.24, 4.4. Plaintiff admits no Sale Event occurred. Compl. ¶ 89. Further, pursuant to the August 8, 2024 Employment Letter, Plaintiff was an at-will employee, and could be freely terminated "at any time without cause." Ex. 1 ¶ 9.

## VIII. PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY ESTOPPEL (COUNTS XX, XXI).

The promise underlying a claim for promissory estoppel "must be a real promise—mere expressions of expectation" or conditional offers are inadequate. *Guilbeau v. Footprint Int'l Holdco, Inc.*, 2026 WL 1180159, at *24 (Del. Ch. Apr. 30, 2026); *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 877 (Del. 2020). "[T]here can be no promissory estoppel unless

26

the terms of the promise are definite in relation to the remedy sought." *Fried v. Stiefel Laboratories, Inc.*, 2012 WL 4364300, at *10 (S.D. Fla. June 8, 2012).

The only alleged promise Plaintiff identifies is the Draft Plan, itself. *See* Compl. ¶¶ 47, 417, 426. As discussed *supra* (pp. 22-24), the Draft Plan did not guarantee Plaintiff any bonus payments—had it taken effect, she would have merely been *eligible* to participate at the Administrator's discretion, and if made a participant, would only receive a bonus in the event of a "Sale Event" and continued employment. Ex. 2 at Arts. 1, 4.1, 4.4; Compl. ¶ 89. Further, the Draft Plan provided that it could be freely amended or terminated by the Compensation Committee. Ex. 2, Art. 5.4. Therefore, Plaintiff cannot establish a "sufficiently definite" promise of participation interests or bonus payments that may be enforced through promissory estoppel. *See, e.g.*, *Windsor I*, 238 A.3d at 877 (affirming dismissal of promissory estoppel claim predicated on conditional offer)*; Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) (dismissing promissory estoppel claim because insurer's confirmation of coverage was not a definite promise to pay claims); *Advanced Prot. Techs., Inc. v. Square D Co.*, 2005 WL 8185594, at *6 (M.D. Fla. Jan. 31, 2005) (dismissing promissory estoppel claim based on promise to either buy plaintiff's interest in joint venture or purchase plaintiff when joint venture ended).

Further, Plaintiff's attempt to vary and circumvent the express language of the Draft Plan by asserting an alternative claim for promissory estoppel is improper under both Florida and Delaware law. "'Promissory estoppel is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove breach of contract.'" *Myers v. 3073 Horseshoe Drive, LLC,* 2024 WL 4040834, at *2 (M.D. Fla. Sept. 4, 2024) (citing *Advanced Mktg. Sys. Corp. v. ZK Yacht Sales*, 830 So. 2d 924, 928 (Fla. 4th DCA 2002); *see Nview Health, Inc. v. David V.*, 2022 WL 16923585, at *18 (M.D. Fla. Nov. 14, 2022) (promissory

27

estoppel may not be based on alleged promises that contradict contract terms).[32]

The conditional nature of the Draft Plan also negates Plaintiff's allegations that she reasonably relied on it to her detriment. *See Windsor*, 238 A.3d at 877 (affirming dismissal of promissory estoppel claim because "a reasonable person would likely have understood that the offer and acceptance were subject to the credit committee's approval"). The Draft Plan made clear that a series of contingencies needed to occur before Plaintiff could hope to receive participation interests or bonus payments: it needed to be implemented and not be amended or terminated, the Administrator needed to select her for participation, she needed to remain employed, and a Sale Event needed to occur.[33] Courts routinely dismiss promissory estoppel claims where, as here, the alleged promises are conditional and subject to future events, which renders reliance objectively unreasonable. *See, e.g., Windsor,* 238 A.3d at 877; *Servicios de Almacen Fiscal Zona Franca Y Mandatos S.A. v. Ryder Sys. Inc.*, 2007 WL 9706466, at *4 (S.D. Fla. June 19, 2007) (dismissing promissory estoppel claim because reliance was "simply not reasonable in light of the indefinite and tentative nature of the promise).[34] It was objectively unreasonable for Plaintiff to make any employment, financial, or life decisions based on an expectancy of hypothetical bonus payments.

## IX.   PLAINTIFF FAILS TO PLEAD FRAUDULENT INDUCEMENT (COUNTS XXII, XXIII).

Plaintiff alleges no false representation of material fact. Instead, she relies upon her receipt of the Draft Plan, which was attached to an employment offer transmitted by eMed's Vice President of Human Resources. Compl. ¶ 435. She claims the Draft Plan induced her to accept the

---

[32]   *See also Fin. Healthcare Assocs., Inc. v. Pub. Health Tr. of Miami-Dade Cnty.*, 488 F. Supp. 2d 1231, 1237 (S.D. Fla. 2007) (dismissing promissory estoppel claim based on conflict between alleged oral promise and contract covering the same subject matter); *Gimaex Holding, Inc. v. Spartan Motors USA, Inc.*, 2016 WL 4056205, at *8 (D. Del. July 28, 2016); *Blaustein v. Lord Baltimore Cap. Corp.*, 2012 WL 2126111, at *4 (Del. Ch. May 31, 2012).

[33]   Ex. 2, Arts. 1, 2.24, 4.1, 4.4, 5.4; Compl. ¶ 89.

[34]   *See also Escarra v. Regions Bank*, 353 F. App'x 401, 403 (11th Cir. 2009) (at-will employee could not reasonably rely upon a salary guarantee that was subject to forfeiture on termination); *Leonardi v. City of Hollywood*, 715 So. 2d 1007, 1010 (Fla 4th DCA 1998) (dismissing at will employee's promissory estoppel claim for wages).

role of CEO in eMed Weight Loss and give up equity in another eMed entity. *Id*. The only statements on which she alleges she relied (if any) are the written contents of the Draft Plan, itself (which she fails to identify or attach). Her vague, conclusory allegations that Ferro and Dearborn "reinforced" "adopted, ratified, and furthered" these unspecified "misrepresentations" do not satisfy Rule 9(b)'s heightened pleading requirements for fraud, requiring dismissal of these Defendants. *See Kanen v. BBQ Holdings, Inc.*, 2024 WL 5508197, at *16 (S.D. Fla. Nov. 8, 2024) (dismissing fraudulent inducement claim where plaintiff alleged that he was misled by email transmitting relevant agreement, but did not attach or describe the email).[35]

Plaintiff identifies no aspect of the Draft Plan that was false. Her employment offer expressly referred to the Draft Plan as "a draft," and that draft stated that it would be effective "as of the date of the Plan's adoption[.]" Ex. 1 ¶ 6; Ex. 2, art. 1; *cf. Braga Inv. & Advisory, LLC v. Yenni*, 2023 WL 3736879, at *13 (Del. Ch. May 31, 2023) (it was unreasonable for plaintiff to accept representation that draft operating agreement would be the final version). In any event, Plaintiff does not claim that she was damaged because the Draft Plan was never implemented, but rather, because the Conversion was not a Sale Event. *See* Compl. ¶ 435. The Draft Plan expressly specified the conditions under which she might expect to receive a Bonus Payment, and Plaintiff admits that those conditions never occurred. *See id.* ¶¶ 89, 437.

To the extent Plaintiff contends that she detrimentally relied on a promise that she would receive a Bonus Payment under circumstances contrary to those specified in the Draft Plan (and she has not adequately alleged any such promise), her reliance was unreasonable as a matter of law, because the Draft Plan expressly foreclosed that possibility. *See, e.g., Terry v. Carnival Corp.*,

---

[35]    *See Dixon v. Allergan USA, Inc.*, 645 F. App'x 930, 932 (11th Cir. 2016) (explaining 9(b)'s particularity requirements for fraud claims); *Costanza Y Cruz Medina v. Scottsdale Ins. Co.*, 2023 WL 11801301, at *3 (S.D. Fla. Mar. 7, 2023) (dismissing fraudulent inducement claim where statements alleged were either true or "bare, generalized allegations").

2014 WL 11804563, at *2 (S.D. Fla. Feb. 12, 2014) ("[r]eliance on fraudulent representations is unreasonable as a matter of law where the alleged misrepresentations contradict the express terms of the ensuing written agreement"); *Kingfishers L.P. v. Finesse US, Inc.*, 2024 WL 4625650, at *7 (Del. Ch. Oct. 30, 2024) ("'[I]t is unreasonable to rely on oral representations when they are expressly contradicted by the parties' written agreement.'").[36] Any purported reliance is rendered further unreasonable by the fact that the Draft Plan could be amended or terminated by the Compensation Committee at any time. Ex. 2, Art. 5.4.

Further, promises of future action (*i.e.*, to make a bonus payment based on a future Sale Event) typically cannot support claims for fraud in the inducement. *See, e.g., Ahmad v. Porche Cap. Ltd.*, 2025 WL 417351, at *4–5 (Del. Super. Ct. Feb. 6, 2025) ("A fraud claim will not stand if the misrepresentation pled is simply '[a]n unfulfilled promise of future performance,' unless 'at the time the promise was made the speaker had no intention of performing.'") (quoting *Market America, Inc. v. Google, Inc.*, 2010 WL3156044, at *4 (D. Del. Aug. 9, 2010)); *Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1224 (S.D. Fla. 2010) ("Fraud must be based on material fact, not on a promise or a prediction of future events.").[37] For example, in *Evans v. Cantor Ins. Grp., LP.*, the District of Delaware dismissed an executive's claim that he was fraudulently induced to sell his minority interest in an insurance business by the defendant's representation that he would receive a post-closing transaction bonus, though none was provided for in the sale agreement. 2022

---

[36] *Accord Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 2009 WL 10667205, at *2 (S.D. Fla. Apr. 6, 2009) ("[W]here the express language of a controlling written contract rebuts allegations of fraudulent inducement [ ] courts dismiss such actions at the pleading stage."); *Topp, Inc. v. Uniden Am. Corp.*, 513 F. Supp. 2d 1345, 1348 (S.D. Fla. 2007) (dismissing claim for fraud in the inducement based on an act that was "clearly permitted by the contractual language."); *Padilla v. Padilla*, 278 So. 3d 333, 334 (Fla. 3d DCA 2019) (affirming dismissal of fraudulent inducement claim that was "expressly belied by the contract documents."); *MicroStrategy Inc. v. Acacia Rsch. Corp.*, 2010 WL 5550455, at *13 (Del. Ch. Dec. 30, 2010) (fraudulent inducement is unavailable when plaintiff could have discovered the misrepresentation by reading the contract).

[37] *Accord MCM Ent., Inc. v. Diaz World Trade Grp.*, 2024 WL 2833649, at *9 (S.D. Fla. Jan. 30, 2024); *Teratech USA, Inc. v. Digital Beauty Grp., LLC*, 2021 WL 9566158, at *4 (S.D. Fla. Nov. 22, 2021); *Maunsell v. Am. Gen. Life & Acc. Ins. Co.*, 707 So. 2d 916, 917 (Fla. 3d DCA 1998).

30

WL 3908005, at *4 (D. Del. Aug. 30, 2022). Plaintiff has not pled any specific facts to support an inference that eMed never intended to pay her a transaction bonus, or that would permit her to expect payment on any terms other than those specified in the Draft Plan, if adopted.

Finally, Plaintiff's fraudulent inducement claims fail because they simply recast her deficient breach of contract claims and seek the same damages, which is improper under both Florida's independent tort doctrine and Delaware's anti-bootstrapping doctrine. *See, e.g.*, *Med-Stop, Inc. v. Vandutch, Inc.*, 2025 WL 26731, at *5–6 (S.D. Fla. Jan. 3, 2025) (dismissing fraudulent inducement claim because it was "inextricably intertwined with Defendants' performance on the contract."); *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *5 (Del. Super. Ct. Mar. 13, 2017) ("Nor can a plaintiff devise a claim for fraud simply by adding the term 'fraudulently induced' to a complaint. [ ] casting an alleged failure to comply with a contract as a failure to disclose an intention to take certain actions arguably inconsistent with that contract is exactly the type of bootstrapping Delaware courts will not entertain.") (*cleaned up*). Florida and Delaware law both require claims for fraudulent inducement to be based on conduct and damages distinct from that alleged in support of a related claim for breach of contract. *See, e.g., Perez v. Scottsdale Ins. Co.*, 2020 WL 607145, at *3 (S.D. Fla. Feb. 7, 2020); *inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *8 (Del. Super. Ct. Jan. 26, 2021). Contrary to these doctrines, Plaintiff fails to allege with particularity any statement she relied upon other than the same Draft Plan under which she attempts to assert breach of contract claims in Counts XIV and XV, and she seeks the same damages for her contract and fraud claims. Compl. ¶¶ 391, 440. *see Perez*, 2020 WL 607145, at *3 (dismissing fraudulent inducement claim where insured alleged no statement by insurer other than the policy terms); *Furnari v. Wallpang, Inc.*, 2014 WL 1678419, at *8 (Del. Super. Ct. Apr. 16, 2014) (dismissing fraudulent inducement

31

claim where plaintiff failed to allege any misrepresentation independent of contract).

## X.   PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE (COUNTS XXIV–XXV).

### A.   The Individual Defendants are Not Strangers to eMed's Relationships.

Plaintiff's tortious interference claims fail at the outset because Ferro and Dearborn are not strangers to the alleged business and contractual relationships. Plaintiff alleges that Ferro is the "founder and controlling equity holder" of eMed, held supervisory authority over her employment, had the authority to "direct all material operational, financial, and personnel decisions" for eMed, and his "actions and directives represented the actions of the organization itself." Compl. ¶¶ 15-17. She alleges that Dearborn is the Executive Chairman of eMed and held "supervisory authority" over her, including the power to make decisions regarding her role, reporting structure, and compensation. *Id*. ¶ 19. The "interference" she alleges against them—"directing" the corporate conversion and acts and decisions with respect to her role and termination—all fall squarely within the scope of their authority and constitute actions of the company, itself.

Florida and Delaware law prohibit claims like these for tortious interference against corporate agents acting within the scope of their authority, as their acts are imputed to the company, which cannot "interfere" with its own contracts and relations. *See, e.g.*, *M & M Realty Partners at Hagen Ranch, LLC v. Mazzoni*, 982 F.3d 1333, 1339–40 (11th Cir. 2020) ("a person with 'any beneficial or economic interest in, or control over,' a contractual relationship is not considered a 'stranger' to the contract and therefore has a 'privilege to interfere' in that relationship"); *Core Distribution v. World Trade Corp.*, 2026 WL 1251628, at *7 (S.D. Fla. May 7, 2026) (dismissing tortious interference claim against COO); *In re CVR Ref., LP Unitholder Litig.*, 2020 WL 506680, at *18 (Del. Ch. Jan. 31, 2020) (dismissing tortious interference claim against directors).[38]

---

[38]   *See also SIG, Inc. v. AT & T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013) (dismissing tortious

Plaintiff's conclusory allegations that Ferro and Dearborn acted with improper intent do not plausibly establish that their actions were "divorced from any legitimate competitive economic interest." *See Core*, 2026 WL 1251628, at *8; Compl.¶¶ 457. Plaintiff does not attribute a single "discriminatory" remark to Dearborn or the "retaliatory" phone call.[39] With respect to Ferro, these allegations are inadequate to establish any discriminatory animus, as explained *supra* pp. 10-13.

### B.   Plaintiff Has No Underlying Contract or Breach.

Count XXV fails for the additional reasons that Plaintiff cannot establish the existence of a contract, or an underlying breach, for the reasons discussed *supra* (pp. 22-24). *See In re CVR*, 2020 WL 506680, at *16; *see also M & M*, 982 F.3d at 1340–41 (holding that, where plaintiff could not prove trust breached its contract, it could not hold trustee liable for tortious interference).

### C.   Plaintiff Pleads No Legitimate Expectancy of the CEO Role or Continued Employment.

Plaintiff was an at-will employee with no reasonable expectancy of being promoted to CEO or remaining employed within the post-Conversion entity. *See* Ex. 1 ¶¶ 1, 9. She alleges no facts tending to suggest that she would have been elevated to the CEO role or remained employed in the absence of alleged interference. *See* Compl. ¶¶ 84, 100. Therefore, her tortious interference claims fails for the additional reason that there was no "'understanding between the parties [that] would have been contemplated had the defendant not interfered.'" *See Commodores Ent. Corp. v. McClary*, 324 F. Supp. 3d 1245, 1256 (M.D. Fla. 2018), *aff'd*, 822 F. App'x 904 (11th Cir. 2020); *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 886 (Del. Ch. 2009) (to survive dismissal,

---

interference claim against corporate officers whom plaintiff failed to aver exceeded the scope of their authority or harmed company interests by executing corporate transaction); *Bridge Fin., Inc. v. J. Fischer & Assocs., Inc.*, 310 So. 3d 45, 50 (Fla. 4th DCA 2020) (affirming judgment on pleadings in favor of partial owner of company on tortious interference claim); *Dieckman v. Regency GP LP*, 2018 WL 1006558, at *5 (Del. Ch. Feb. 20, 2018) (Directors only tortiously interfere with their company's agreements by exceeding their scope of authority).

[39]   Plaintiff's attempts to commingle and conflate the distinct acts of Ferro, Dearborn, and eMed are improper; she must plead actionable conduct by each individual Defendant to proceed against him. *See, e.g.*, *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011).

33

plaintiff must allege "the reasonable probability of a business opportunity").

## XI.   PLAINTIFF FAILS TO STATE CIVIL CONSPIRACY CLAIMS (COUNTS XXVI, XXVII).[40]

### A.   Plaintiff Pleads No Underlying Wrong or Unlawful Act.

It is black-letter law that conspiracy is "not a freestanding tort." *SFM Holdings Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014); *Lorillard Tobacco Co. v. Alexander*, 123 So.3d 67, 80 (Fla. 3d DCA 2013). Where "there is no underlying 'unlawful act' or 'lawful act done by unlawful means'" a civil conspiracy claim must be dismissed. *Hercules Cap., Inc. v. Gittleman*, 2018 WL 395489, at *24 (S.D. Fla. Jan. 12, 2018).[41] Plaintiff fails to identify any recognized tort that was the purported object of the alleged conspiracy. Instead, she alleges that Defendants "use[d] [her] industry credibility and executive relationships to secure institutional investment" and execute the corporate conversion before she received bonus payments under the Draft Plan. Compl. ¶ 486. By way of underlying acts: Plaintiff alleges that Defendants: 1) executed the corporate conversion; 2) issued the Change of Position letter; 3) retained a forensic expert; and 4) terminated her. *Id.* ¶ 487. None of this conduct is unlawful, and Plaintiff had no entitlement to compensation under the Draft Plan for the reasons described *supra* (pp. 22-24). *See Crawley-Kitzman v. Hernandez*, 324 So. 3d 968, 977 (Fla. 3d DCA 2021) (dismissing civil conspiracy claim alleging that employer conducted sale transaction in a manner to circumvent employee's agreement and deprive her of contractual compensation). Further, "a breach of contract is not a wrong or unlawful act cognizable under civil conspiracy." *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021); *accord NACCO Indus., Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009).

### B.   The Intra-Corporate Conspiracy Doctrine Bars Plaintiff's Conspiracy Claims.

---

[40] These Counts, simply labeled "Civil Conspiracy," reference no underlying cause of action.

[41] *Accord Renovaro Inc. v. Gumrukcu,* 2025 WL 3134533, at *12 (Del. Ch. Nov. 7, 2025) (dismissing civil conspiracy claim where allegations failed to establish underlying fraud).

Under the intra-corporate conspiracy doctrine, a company cannot conspire with its own employees and agents, as they comprise a single legal entity. *See Hogan v. City of Fort Walton Beach*, 817 F. App'x 717, 723 (11th Cir. 2020); *Carey v. Kirk*, 2026 WL 836688, at *3 (11th Cir. Mar. 26, 2026); *Mancinelli v. Davis*, 217 So. 3d 1034, 1037 (Fla. 4th DCA 2017).[42] Plaintiff alleges that Mr. Ferro is the founder and controlling equity holder and of the eMed Defendants, including eMed, LLC, and Mr. Dearborn is their Executive Chairman. Compl. ¶¶ 15-19. She alleges that both held supervisory authority over her, and that Mr. Ferro's "actions and directives represented the actions of the organization itself." *Id*. ¶¶ 16-17. They therefore could not have conspired with eMed, as they comprise a single entity, acting for the company.

Plaintiff's conclusory allegations that the individual Defendants were personally motivated are too conclusory to establish the narrow personal interest exception to the intra-corporate conspiracy doctrine. *See Mancinelli*, 217 So. 3d at 1037. As argued *supra* (pp. 10-13), Mr. Ferro's stray comments do not plausibly establish sexual animus. The alleged financial benefits the individual defendants stood to gain from the corporate conversion were merely incidental to financial benefits to eMed. *Id.* (rejecting conclusory allegations regarding CEO's personal animus because any benefits he stood to gain were merely incidental to the company's gain). And, each of the relevant acts was plainly undertaken for corporate purposes. *See id.*; *WIA Holdings, LLC v. Scot. Am. Cap.*, 2026 WL 1204494, at *17 (Del. Ch. Jan. 20, 2026) (conclusory allegations were insufficient to bring manager's conduct within the "narrow personal motivation exception").

## CONCLUSION

WHEREFORE, Defendants respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice and award any other such relief as it deems just and proper.

---

[42]   *Accord Driven Intermediate Holdings, Inc. v. Jimenez*, 2025 WL 2631622, at *5 (Del. Super. Ct. Aug. 28, 2025) (a corporation cannot conspire with its officers and agents).

35

## REQUEST FOR HEARING

The Counts alleged in Plaintiff's Complaint and the questions of law presented by them are numerous, and even the enlarged page limits authorized by the Court necessarily cabin the scope and depth of discussion that is possible within this briefing. Pursuant to Local Rule 7.1(b)(2), Defendants respectfully requests that this Court enter an Order specially setting a ninety-minute hearing on Defendants' Motion to Dismiss, to provide the parties the opportunity to further distill these claims, elaborate upon the dispositive arguments and legal authorities presented herein as beneficial and appropriate, and address any of the Court's questions.

Dated: July 27, 2026          Respectfully submitted,

/s/ Olga Vieira
Olga M. Vieira
Fla. Bar No. 29783
Shalia Sakona
Fla. Bar No. 107398
Quinn, Emanuel, Urquhart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Tel.: (305) 402-4880

*Counsel for Defendants eMed LLC, eMed Population Health, Inc., Michael Ferro, and Justin Dearborn*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of July 2026, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing

to all counsel of record.

<u>/s/ Olga Vieira</u>
Olga M. Vieira
Fla. Bar No. 29783
Quinn, Emanuel, Urquhart & Sullivan LLP
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Tel.: (305) 402-4880