# EXHIBIT B

eMed™

# PROPRIETARY INTERESTS PROTECTION AGREEMENT

This Proprietary Interests Protection Agreement (the "Agreement") is made and entered into by and between eMed, LLC, eMed Labs, LLC, and its affiliates (collectively, the "Company") and the undersigned contractor, consultant or employee ("Employee").

In addition to other good and valuable consideration, Employee is expressly being given employment or continued employment with the Company, benefits, training and/or trade secrets and other confidential information of the Company and its customers, suppliers, vendors or affiliates to which Employee would not have access but for Employee's relationship with the Company in exchange for Employee agreeing to the terms of this Agreement. In consideration of the foregoing, Employee recognizes, acknowledges and agrees as follows:

1. **Confidential Information**. For purposes of this Agreement, "Confidential Information" shall include the Company's trade secrets as defined under Florida law, as well as any other information or material which is not generally known to the public, and which (a) is generated, collected by or utilized in the operations of the Company's business and relates to the actual or anticipated business, research or development of the Company; or (b) is suggested by or results from any task assigned to Employee by the Company or work performed by Employee for or on behalf of the Company.

   Confidential Information shall not be considered generally known to the public if Employee or others improperly reveal such information to the public without the Company's express written consent and/or in violation of an obligation of confidentiality owed to the Company. Examples of Confidential Information include, but are not limited to, all customer, client, advertiser and vendor lists, budget information, contents of any database, contracts, product productivity standards, research and development work, software, business plans, projections, market research, perceptual studies, strategic plans, marketing information, financial information (including financial statements), sales information, training manuals, employee lists and compensation of employees, and all other competitively sensitive information with respect to the Company, whether or not it is in tangible form, and including without limitation any of the foregoing contained or described on paper or in computer software or other storage devices, as the same may exist from time to time.

2. **Acknowledgements**. Employee recognizes and acknowledges each of the following:

   (a) The Company has invested significant time and money in developing its Confidential Information. Provided that Employee agrees to the terms of this Agreement, the Company will afford Employee access to Confidential Information to the extent that the Company deems Employee's access to Confidential Information is necessary for the performance of Employee's duties. Absent Employee's relationship with the Company, Employee would not have had any access to Confidential Information. Further, though Employee may from time to time assist in developing such Confidential Information, it will remain the sole property of the Company.

   (b) The Company has expended substantial time, effort, funds and expertise in acquiring and maintaining each of its customers, including without limitation, its advertisers and subscribers. The Company's close relationship with its customers is important and valuable to the continued financial success of the Company. As a result of Employee's employment with the Company,

Employee may become personally acquainted with the customers that do business with the Company. Absent Employee's relationship with the Company, Employee would not have had contact with these customers on behalf of the Company. Furthermore, unless Employee agrees to the terms of this Agreement, the Company will not allow Employee to further develop the Company's relationships with its customers.

(c) The legitimate and protectable interests of the Company and such covenants are ancillary to the employment relationship of the parties.

(d) Employee's obligations under this Agreement are in addition to any and all obligations concerning the same subject matter arising under any applicable law including, without limitation, common law relating to fiduciary duties and common law and statutory law relating to trade secrets.

3. **Non-Disclosure**.

(a) Employee will not, without the Company's prior written permission, directly or indirectly, utilize or disclose any Confidential Information for any purpose other than for a legitimate Company business purpose either during or after Employee's employment or relationship with the Company ends. This non-disclosure obligation shall continue for as long as such matters remain Confidential Information.

(b) This Agreement shall not prevent Employee from revealing evidence of criminal wrongdoing to law enforcement or prohibit Employee from divulging Confidential Information by order of court or agency of competent jurisdiction. However, Employee shall promptly inform the Company of any such situations and shall take such reasonable steps to prevent disclosure of Confidential Information until the Company has been informed of such requested disclosure and the Company has had an opportunity to respond to the court or agency.

4. **Return of Confidential Information and Other Property**. Employee agrees to deliver promptly to the Company on termination of the Employee's employment with the Company, or at any time that the Company may so request, all of the Company's property including, but not limited to, (i) cellular telephones, computers, printers, key cards, documents or other tangible property of the Company, and (ii) all Confidential Information (and all copies thereof) relating to the Company's business which the Employee may then possess or have under the Employee's control. Employee shall not retain in Employee's possession or control any copies of such information or property.

5. **Non-Competition**. During the term of Employee's employment with the Company and for one (1) year period following the termination of Employee's employment with the Company for any or no reason, Employee will not, and Employee will cause his or her Affiliates to not, directly or indirectly, alone or in conjunction with any other person or entity, own, manage, operate or control or participate in the ownership, management, operation or control of, or become associated, as an employee, director, officer, advisor, agent, consultant, principal, partner, member or independent contractor with or lender to, any person or entity engaged in or aiding others to engage in business competitive with the Company, located anywhere in the United States of America.

6. **Non-Solicitation**. During the period of time that Employee is employed by the Company and the twelve (12) month period immediately following termination of Employee's employment, for any reason, Employee shall not, on Employee's own behalf or on behalf of any other individual or entity, without the prior written consent of the Company: (a) hire, recruit, solicit or otherwise

attempt to employ or retain, any person who is or was an employee of the Company within the twelve (12) month period immediately preceding the termination of Employee's employment; or (b) solicit the sale of any products or services that are similar to or competitive with products or services offered by, manufactured by, designed by, or distributed by the Company to any person, company or entity which was a customer or potential customer of the Company for such products or services and with whom Employee had direct contact or about whom Employee learned Confidential Information at any time during the last twelve (12) months of Employee's employment with Company.

7. **Ownership of Inventions**. For purposes of this Agreement, "Inventions" shall mean all software programs, source or object code, improvements, formulas, developments, ideas, processes, techniques, know-how, data, and discoveries, whether protectable by patent or copyright, conceived or reduced to practice by Employee while in the Company's employ, either solely or jointly with others, and whether or not during regular working hours, and conceived or reduced to practice by Employee within one year of the termination of Employee's employment with the Company that resulted from Employee's work with the Company.

(a) Employee acknowledges and agrees that all Inventions shall be the Company's sole and exclusive property to the maximum extent permitted by law. Employee shall disclose all Inventions promptly and fully to the Company. Employee further acknowledges and agrees that to the extent relevant, this Agreement constitutes a "work for hire agreement" under the United States Copyright Act of 1976, as amended (17 U.S.C. § 101 et. seq.) ("Copyright Act"), and that any copyrightable work ("Work") constitutes a "work made for hire" under the Copyright Act such that the Company is the copyright owner of the Work. To the extent that any portion of the Work is held not to be a "work made for hire" under the Copyright Act, the Employee hereby irrevocably assigns to the Company all right, title and interest in such Work. Additionally, to the extent that any Invention is held not to be the exclusive property of the Company, and except as excluded in Section 7(c) below, Employee hereby agrees to and hereby grants and assigns to the Company all of Employee's right, title and interest in and to all Company Inventions. Employee shall at the request of the Company (but without additional compensation from the Company) execute any and all papers or instruments necessary and perform all lawful acts that the Company deems reasonably necessary or desirable to evidence the Company's rights in any Inventions or Work.

(b) Concurrent with Employee's execution of this Agreement, Employee shall attach a list and brief description of all inventions and discoveries, if any, made or conceived by Employee prior to Employee's employment with the Company and that are to be excluded from this Agreement. If no such list is attached at the time of execution of this Agreement, it shall be

conclusively presumed that Employee has waived any right he may have to any such invention or discovery which relates to the Company's business.

8. **Attorneys' Fees**. In the event any legal proceeding is initiated by any party against any other party to enforce, interpret or otherwise obtain relief in connection with this Agreement (the "Proceeding"), the judge or tribunal in such Proceeding shall, upon request, declare a "Prevailing Party" in the Proceeding, and the Prevailing Party shall be entitled to recover from the other party all reasonable costs and expenses, including actual attorneys' fees and experts' fees, relating to or arising out of such Proceeding.

9. **Applicable Law**. This Agreement shall be construed, interpreted, and enforced, and its validity and enforceability determined, strictly in accordance with the laws of the State of Florida without applying its conflicts of laws principles.

10. **Exclusive Jurisdiction/Venue**. Any and all lawsuits, legal actions or proceedings against either party arising out of this Agreement will be brought in Florida state court located in Miami Dade County, Florida or the federal court of competent jurisdiction sitting in Miami Dade County, Florida, and each party shall submit to and accept the exclusive jurisdiction of such court for the purpose of such suit, legal action or proceeding. Each party irrevocably waives any objection it may have now or any time in the future to this choice of venue and further waives any claim that any suit, legal action or proceeding brought in any such court has been brought in an inappropriate forum. Employee shall stipulate in any proceeding that this Agreement is to be considered for all purposes to have been executed and delivered within the geographic boundaries of the State of Florida.

11. **Assignability**. The rights herein may be assigned by the Company and shall bind and inure to the benefit of the Company's successors, assigns, heirs and representatives. If the Company makes any assignment of the rights herein, Employee agrees that this Agreement shall remain binding upon Employee in any event.

12. **Survival**. Employee's obligations set forth in this Agreement shall survive the termination of the Employee's employment with the Company.

13. **No Waiver.** No delay or omission by the Company in exercising any right under this Agreement will operate as a waiver of that or any other right. A waiver or consent given by the Company on any one occasion is effective only in that instance and will not be construed as a bar to or waiver of any right on any other occasion.

14. **At-Will Employment**. Employee's employment with the Company is at-will and this Agreement does not constitute a contract of employment and does not imply that Employee's employment will continue for any specific period of time. Nothing in this Agreement shall be construed to alter Employee's at-will employment status, or interfere in any way with the Employee's right or the right of the Company to terminate Employee's employment at any time, with or withoutcause.

(a) Section 7(a) of this Agreement regarding assignment of right, title and interest do not apply to Inventions for which no equipment, supplies, facility or trade secret information of the0

Company was used and which was developed entirely on Employee's own time, unless (i) the Inventions relate either to the business of the Company, or to the Company's actual or demonstrably anticipated research or development, or (ii) the Inventions result from any work directly or indirectly performed by the Employee for the Company.

15. **Remedies and Injunctive Relief**. If the Employee commits a breach or threatens to breach any of the provisions of Sections 3 through 7 hereof, the Company shall have the right and remedy to have the provisions of this Agreement specifically enforced by injunction or otherwise by any court having jurisdiction, it being acknowledged and agreed that any such breach will cause irreparable injury to the Company in addition to money damage and that money damages alone will not provide a complete or adequate remedy to the Company; it being further agreed that such right and remedy shall be in addition to, and not in lieu of, any other rights and remedies available to the Company under law, in equity or pursuant to this Agreement.

16. **Severability; Modification.**

(a) If, at the time of enforcement of this Agreement, a court holds that the duration, geographical area or scope of activity restrictions stated herein are unreasonable under circumstances then existing or impose a greater restraint than is necessary to protect the goodwill and other business interests of the Company, Employee agrees that the maximum duration, scope or area reasonable under such circumstances will be substituted for the stated duration, scope or area and that the court will be allowed to revise the restrictions contained herein to cover the maximum duration, scope and area permitted by law, in all cases giving effect to the intent of the parties that the restrictions contained herein be given effect to the broadest extent possible.

(b) Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under applicable law, and incapable of being modified, such invalidity, illegality or unenforceability will not affect any other provision, but this Agreement will be reformed, construed and enforced as if such invalid, illegal or unenforceable provision had never been contained herein.

17. **Extension of Term of Covenants Following Violation**. The period during which the prohibitions of Sections 5 and 6 of this Agreement are in effect shall be extended by any period or periods during which the Employee is in violation of Sections 5 and 6.

18. **Non-Disparagement**. Subject to Section 3(b) of this Agreement, Employee shall not disparage the Company, its officers, directors, administrators, representatives, employees, contractors, consultants or customers and will not engage in any communications or other conduct which might interfere with the relationship between the Company and its current, former, or prospective employees, contractors, consultants, customers, suppliers, regulatory entities, and/or any other persons or entities.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed as of the last day and year set forth below.

**EMPLOYEE:**

Signature: DocuSigned by: Wendi Mader 4C70C246F1D047D...

Printed Name: Wendi Mader

Date: 28 June 2024 | 07:11 PDT

**COMPANY:**

Signature: DocuSigned by: Ken Finneran E8EB61AD70D849C...

Printed Name: Ken Finneran

Title: VP, Human Resources

Date: 28 June 2024 | 17:04 BST

DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: FF833FB5858145E4B279D8A0B3A95C82 | | Status: Completed |
| Subject: eMed Offer Letter | | |
| Source Envelope: | | |
| Document Pages: 8 | Signatures: 4 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | VP Human Kenneth Finneran |
| AutoNav: Enabled | | 184-192 Drummond Street |
| EnvelopeId Stamping: Enabled | | London, London NW1 3HP |
| Time Zone: (UTC) Dublin, Edinburgh, Lisbon, London | | ken@emed.com |
| | | IP Address: 174.48.236.180 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>6/26/2024 10:11:56 PM | Holder: VP Human Kenneth Finneran<br>ken@emed.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Wendi Mader<br>Wendi.S.Mader@gmail.com<br>Security Level: Email, Account Authentication (Optional) | DocuSigned by:<br>Wendi Mader<br>4C70C246F1D047D...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 99.93.143.112 | Sent: 6/26/2024 10:15:02 PM<br>Resent: 6/27/2024 7:42:02 PM<br>Viewed: 6/27/2024 8:12:30 PM<br>Signed: 6/28/2024 3:11:06 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 6/26/2024 10:56:44 PM
ID: b8c285c8-4496-4fb8-b2a9-a80b4b6f70f4

| | | |
|---|---|---|
| Ken Finneran<br>ken@emed.com<br>VP, Human Resources<br>eMed, LLC<br>Security Level: Email, Account Authentication (Optional) | DocuSigned by:<br>ken Finneran<br>E8EB61AD70D849C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 8.17.46.4 | Sent: 6/28/2024 3:11:08 PM<br>Viewed: 6/28/2024 5:04:25 PM<br>Signed: 6/28/2024 5:04:34 PM |

**Electronic Record and Signature Disclosure:**
Accepted: 2/16/2024 8:01:49 PM
ID: daf9a34c-8754-43a2-9f77-3bcc7008d3d4

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Nurdes Gomez<br>nurdes@emed.com<br>Security Level: Email, Account Authentication (Optional) | COPIED | Sent: 6/28/2024 5:04:36 PM<br>Viewed: 6/28/2024 5:18:38 PM |

**Electronic Record and Signature Disclosure:**
Not Offered via DocuSign

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 6/26/2024 10:15:03 PM |
| Envelope Updated | Security Checked | 6/27/2024 7:41:46 PM |
| Envelope Updated | Security Checked | 6/27/2024 7:41:46 PM |
| Envelope Updated | Security Checked | 6/27/2024 7:41:46 PM |
| Certified Delivered | Security Checked | 6/28/2024 5:04:25 PM |
| Signing Complete | Security Checked | 6/28/2024 5:04:34 PM |
| Completed | Security Checked | 6/28/2024 5:04:36 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**